2006 UT App.71

**STATE of Utah, Plaintiff and Appellee,**

v.

**Daniel PEREZ–AVILA, Defendant and Appellant.**

No. 20040174–CA.

Court of Appeals of Utah.

Feb. 24, 2006.

Aaron P. Dodd, Fillmore Spencer LLC, Provo, and Margaret P. Lindsay, Orem, for Appellant.

Mark L. Shurtleff, Attorney General, and Matthew D. Bates, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, BILLINGS, and ORME.

## OPINION

ORME, Judge:

¶ 1 Defendant Daniel Perez–Avila appeals his convictions and sentences for driving under the influence of alcohol, having an open alcoholic beverage container in a vehicle, two counts of automobile homicide, and two counts of child abuse. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 In May of 2002, Defendant rolled his pickup truck on Interstate 15 near Leeds, Utah. Defendant, his pregnant wife, and their two children were ejected from the vehicle during the accident. Defendant's wife and unborn child were killed, and Defendant and his children were seriously injured. Based on a blood draw taken just after the accident, which put Defendant's blood alcohol concentration over the legal limit, as well as other witness testimony presented at trial, Defendant was convicted by a jury of two counts of automobile homicide, second degree felonies, see Utah Code Ann. § 76–5–207 (Supp.2005); driving under the influence of alcohol, a third degree felony, see id. § 41–6a–502 (2005); two counts of child abuse, class A misdemeanors, see id. § 76–5–109 (Supp.2005); and having an open alcoholic beverage container in a vehicle, a class C misdemeanor. See id. § 41–6a–526 (2005).[1]

¶ 3 Defendant appealed to this court, arguing that his trial counsel was ineffective and that but for trial counsel's deficient performance he would have received a more favorable outcome at trial. Defendant specifically argued that he was denied the right to effective assistance of counsel when his trial counsel failed to seek to suppress the admission of the blood draw evidence and failed to request that the driving under the influence charge (DUI) be consolidated with the automobile homicide charges as a lesser included offense. Because the factual issue concerning Defendant's state of consciousness at the time of the blood draw was vital to our determination of this claim, we remanded the case, on our own motion, for the trial court to make a specific finding as to whether Defendant was conscious at the time of the blood draw. See Utah R.App. P. 23B(a); State v. Litherland, 2000 UT 76, ¶ 17 n. 7, 12 P.3d 92 (noting that rule 23B "expressly provides that the appellate court may remand according to its discretion," even "on its own motion").

¶ 4 On remand, the trial court found that "[D]efendant's neurological condition and physiological condition rendered him incapable of consenting or refusing consent to the blood draw throughout his stay at [the hospital]."[2] The trial court specifically found that Defendant was unconscious when his blood was drawn. The test results of the blood draw put Defendant's blood alcohol concentration at .240—three times the legal limit. This court retained jurisdiction over the instant case, notwithstanding the limited rule 23B remand, and we now address Defendant's ineffective assistance of counsel claims.

## ISSUE AND STANDARD OF REVIEW

¶ 5 Defendant argues that he was denied the right to effective assistance of counsel when his trial counsel failed to seek to suppress the admission of blood draw evidence and failed to request that the DUI charge be merged as a lesser included offense of the automobile homicide charges. When, as in this case, a claim of ineffective

---

1. Utah Code sections 41–6a–502 and 41–6a–526, formerly appearing in the Utah Code as sections 41–6–44 and 41–6–44.20, respectively, were recently renumbered. See Utah Code Ann. § 41–6a–502 amendment notes (2005); id. § 41–6a–526 amendment notes. Because their substance remains the same as the statutes under which Defendant was convicted, we cite to the current section numbers as a convenience to the reader.

2. Two blood draws were actually taken. The first was a medical/diagnostic blood draw ordered by the attending physician. That blood draw showed a blood alcohol concentration of .304. The second blood draw, taken a half-hour after the first, was a forensic blood draw requested by the police. That blood draw showed a blood alcohol concentration of .240. Our discussion in the text refers to this second blood draw.

assistance is raised for the first time on appeal, we resolve the issue as a matter of law. *See State v. Cosey*, 873 P.2d 1177, 1179 (Utah Ct.App.), *cert. denied*, 883 P.2d 1359 (Utah 1994).

## ANALYSIS

¶ 6 To establish ineffective assistance of counsel, Defendant must meet both prongs of the test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Utah Supreme Court has held that to prevail on an ineffective assistance of counsel claim under the *Strickland* test, " 'a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant.' " *Carter v. Galetka*, 2001 UT 96, ¶ 31, 44 P.3d 626 (quoting *Parsons v. Barnes*, 871 P.2d 516, 521 (Utah), *cert. denied*, 513 U.S. 966, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994)) (alteration omitted). "[B]ecause a defendant has the burden of meeting both parts of the *Strickland* test, it is unnecessary for this court to apply both parts where our inquiry reveals that one of its parts is not satisfied." *State v. Marvin*, 964 P.2d 313, 315 (Utah 1998).

## I. Blood Draw

¶ 7 It is well settled that counsel's performance at trial is not deficient if counsel refrains from making futile objections, motions, or requests. *See, e.g., State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546. Here, trial counsel's failure to move to suppress the blood draw evidence did not constitute ineffective assistance of counsel because Defendant's state of unconsciousness when the blood draw was taken renders any objection to the evidence futile. Indeed, seeking to suppress the evidence on the ground that the blood draw was taken without a warrant and without Defendant's consent would have been

futile in this case because, under Utah law, Defendant gave his legal—albeit implied—consent to the blood draw.

¶ 8 Utah Code section 41–6a–520 "grants peace officers the authority to obtain blood samples from drivers who operate motor vehicles while under the influence of intoxicants." *In re R.L.I.*, 771 P.2d 1068, 1069 (Utah 1989) (referring to former numbering of statute). The statute specifically provides that a driver is considered to have given his consent to certain chemical tests, including the testing of his blood to determine if he had a blood alcohol concentration over the statutory limit. *See* Utah Code Ann. § 41–6a–520(1)(a) (2005). Importantly, section 41–6a–522 adds that "[a]ny person who is dead, unconscious, or in any other condition rendering the person incapable of refusal to submit to any chemical test or tests is considered to not have withdrawn the consent provided for" under the implied consent statute. Utah Code Ann. § 41–6a–522 (2005).[3] Given that the trial court found on remand that Defendant was unconscious when his blood was drawn, Defendant was incapable of withdrawing his implied consent to the blood draw. Accordingly, we conclude it would have been futile for his trial counsel to have sought to suppress the blood draw evidence, and Defendant's ineffective assistance of counsel claim therefore fails insofar as it relates to trial counsel's failure to seek to suppress the blood draw evidence. *See State v. Wight*, 765 P.2d 12, 16 (Utah Ct.App.1988).

## II. Merger

¶ 9 We next consider Defendant's argument that his trial counsel was ineffective for failing to request that the DUI charge be consolidated with the automobile homicide charges as a lesser included offense that merged into the greater offenses. Defendant argues that trial counsel's deficient performance allowed him to be impermissibly convicted of a lesser included offense, thus subjecting him to unconstitutional double

---

**3.** Utah Code sections 41–6a–520 and 41–6a–522, formerly appearing in the Utah Code as section 41–6–44.10, have also been renumbered by a 2005 amendment. *See* Utah Code Ann. § 41–6a– 520 amendment notes (2005). As the substance of these statutes remains largely unchanged in the renumbered version, we cite to the renumbered version as a convenience to the reader.

jeopardy.[4] If trial counsel fails to request the consolidation of charges under the merger doctrine, and consolidation would be in order, trial counsel has failed to provide effective assistance of counsel. *See State v. Finlayson,* 2000 UT 10, ¶¶ 24–26, 994 P.2d 1243; *State v. Crosby,* 927 P.2d 638, 645–46 (Utah 1996); *State v. Ross,* 951 P.2d 236, 246 (Utah Ct.App.1997). While this case presents a closer question than one might assume at first blush, we are persuaded that Defendant's trial counsel should have requested that the DUI conviction be consolidated with the automobile homicide convictions and was ineffective for not doing so.[5]

¶ 10 Utah Code section 76–1–402 codifies the "judicially-crafted" merger doctrine that "protect[s] criminal defendants from being twice punished for committing a single act that may violate more than one criminal statute." *State v. Smith,* 2005 UT 57, ¶ 7, 122 P.3d 615 (quotations and citations omitted). *See also* Utah Code Ann. § 76–1–402(3) (2003) ("A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense."). Under section 76–1–402, an offense qualifies as a lesser included offense when the offense "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* § 76–1–402(3)(a). In other words, "where the two crimes are 'such that the greater cannot be committed without necessarily having committed the lesser,' then as a matter of law they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *State v. Hill,* 674 P.2d 96, 97 (Utah 1983) (quoting *State v. Baker,* 671 P.2d 152, 156 (Utah 1983)).

¶ 11 The State concedes that DUI appears to be a lesser included offense of automobile homicide under the traditional "test for determining whether a conviction for a second offense arising out of the same set of facts violates section 76–1–402(3)." [6] *Smith,* 2005 UT 57 at ¶ 9, 122 P.3d 615. Indeed, a quick comparison of the two offenses reveals the identical requirement that the State show that a defendant operated a vehicle with a blood or breath alcohol concentration of .08 or greater, or was under the influence of drugs or alcohol to such a degree that defendant could not safely operate a vehicle. *Compare* Utah Code Ann. § 41–6a–502 (2005) *with* Utah Code Ann. § 76–5–207 (Supp.2005). In fact, this is the *only* required showing for DUI. *See id.* § 41–6a–502. Hence, because all of the elements of DUI must be proven to establish automobile homicide, the conclusion appears obvious that Defendant was facing double jeopardy and that trial counsel should have requested that the two offenses be consolidated.

---

4. It is in the context of an ineffective assistance of counsel claim that Defendant has raised his lesser included offense claim for the first time on appeal. This is one of the permissible routes by which a defendant may pursue a lesser included offense claim for the first time on appeal. *See, e.g., State v. Lee,* 2006 UT 5, ¶ 24 (stating that where defendant "did not object to the trial court's failure to merge the two convictions, he may obtain review of this claim only if he succeeds in establishing plain error, exceptional circumstances, or ineffective assistance of counsel"). We also note that the invited error doctrine is inapplicable here. Defendant did not affirmatively assent to a decision by the trial court not to consolidate the charges, as the merger issue was never raised nor considered by the trial court. *See id.* at ¶ 24 n. 4.

5. It appears to be immaterial to our ineffective assistance of counsel analysis when exactly trial counsel should have made a motion to consolidate the charges or the convictions in this case. This court has held that in order to invoke the protections provided by the merger doctrine, defense counsel "can object that charges merge 'at any time, either during trial, or following the conviction on a motion to vacate,' but the trial court should rule on the objection only if the jury returns convictions." *State v. Lopez,* 2004 UT App 410, ¶ 9, 103 P.3d 153 (quoting *State v. Finlayson,* 2000 UT 10, ¶ 24, 994 P.2d 1243). Thus, for our purposes, it is only important to note that trial counsel's performance will be adjudged deficient for failing to raise the merger argument at all when it should, indeed, have been raised. *See Finlayson,* 2000 UT 10 at ¶ 24, 994 P.2d 1243.

6. This test, originally set forth in *State v. Hill,* 674 P.2d 96 (Utah 1983), requires "comparison of 'the statutory elements of the two crimes [first] as a theoretical matter and [second], where necessary, by reference to the facts proved at trial.'" *State v. Smith,* 2005 UT 57, ¶ 9, 122 P.3d 615 (quoting *Hill,* 674 P.2d at 97) (alterations in original).

¶ 12 The State argues, however, that Utah Supreme Court precedent renders this seemingly obvious conclusion inappropriate. The State contends that the automobile homicide statute, under the analysis set forth in *State v. McCovey*, 803 P.2d 1234 (Utah 1990), *overruled in part by State v. Smith*, 2005 UT 57, 122 P.3d 615, is by its nature and purpose an enhancement statute, which precludes merger of the DUI charge into the automobile homicide charges.[7] As a result, the State argues, trial counsel was not ineffective for failing to request that the charges be consolidated.

¶ 13 Given the fact that no Utah case has definitively applied *McCovey* to the automobile homicide statute to prevent a DUI offense from merging with an automobile homicide offense under section 76–1–402— and it is not clear that *McCovey* would prevent merger even if it remained the controlling standard—we disagree with the State's position that trial counsel was not ineffective for failing to request that the charges be consolidated. And given the Utah Supreme Court's recent analysis in *State v. Smith*, 2005 UT 57, 122 P.3d 615, we further conclude that a DUI offense does merge with an automobile homicide offense as a lesser included offense, and Defendant was therefore prejudiced by his trial counsel's failure to request the consolidation of the two.[8]

¶ 14 Until recently, the inquiry into whether the Legislature intended a statute to be an enhancement statute, and thereby excluded from the merger doctrine, has been guided by *McCovey*. In *Smith*, however, the Court "revisit[ed] the issue of enhancement statutes and their relationship to section 76–1–402(3)" and chose to "depart from *McCovey's* somewhat nebulous focus on a statute's 'nature and purpose' and return to the core principle of statutory construction." *Id.* at ¶ 11 (citation omitted). Now, "the determination of a greater-lesser relationship between offenses" must rest only "on a comparison of 'the facts required to establish the commission of the offense[s] charged.'" *Id.* (quoting Utah Code Ann. § 76–1–402(3)(a)) (alteration in original). That means that "when considering whether the legislature intended to exempt an offense from operation of the merger doctrine, we must base our conclusion on an objective examination of *the plain language and structure of the statute* defining the offense." *Id.* (emphasis added). Consequently,

if the legislature intends to preclude section 76–1–402(3) from requiring merger in a specific instance, it must *clearly indicate* that the provision in question is intended to enhance the penalty for one type of offense when certain characteristics are present that independently constitute a different offense. Only when such an *explicit*

---

7. In *State v. McCovey*, 803 P.2d 1234 (Utah 1990), *overruled in part by State v. Smith*, 2005 UT 57, 122 P.3d 615, the Utah Supreme Court recognized that section 76–1–402's merger doctrine would not apply "in cases where the legislature intended a statute to be an enhancement statute." *Smith*, 2005 UT 57 at ¶ 9, 122 P.3d 615 (citing *McCovey*, 803 P.2d at 1237). According to the Court, the rationale for excepting enhancement statutes from the merger doctrine was that "'enhancement statutes are different in nature than other criminal statutes' because they single out particular characteristics of criminal conduct as warranting harsher punishment." *Smith*, 2005 UT 57 at ¶ 10, 122 P.3d 615 (quoting *McCovey*, 803 P.2d at 1237). Thus, in *McCovey*, the Court held that aggravated robbery does not merge as a lesser included offense of second degree felony murder, even though under the usual two-part test the two would merge. *See McCovey*, 803 P.2d at 1237–39. This is because felony murder "is a strict liability offense that enhances an otherwise unintentional killing to second degree murder." *Id.* at 1238. The Court reached its determination in no small part by examining "the nature and purpose of the felony murder statute," rather than by a plain reading of its provisions. *Id. See also Smith*, 2005 UT 57 at ¶ 10, 122 P.3d 615.

8. The prejudice Defendant suffered because of his trial counsel's deficient performance may not seem readily apparent given that Defendant was sentenced to "an indeterminate term of not to exceed five years" for the DUI conviction, and that sentence is to be served concurrently with the harsher sentences he received for the two counts of automobile homicide—consecutive sentences of one to fifteen years. It is sufficient prejudice, however, that the DUI sentence, although concurrently served, would likely increase the time the Board of Pardons and Parole would require Defendant to serve, *see State v. Finlayson*, 2000 UT 10, ¶ 25, 994 P.2d 1243, not to mention the fact it would violate constitutional double jeopardy protections to allow Defendant to be punished twice for the same crime.

*indication of legislative intent is present* in the specific offense statute will we consider it appropriate to exempt that statute from operation of the general merger requirements in section 76–1–402(3).

*Id.* (emphasis added) (footnote omitted).

¶ 15 Under its new approach in *Smith,* the Court provided two examples of statutory language and structure that would render a statute an enhancement statute. As part of the underlying case in *Smith,* the Court examined whether a crime of violence, such as aggravated assault, merges as a lesser included offense of second degree felony use of a concealed weapon. *See id.* at ¶¶ 1, 12. The concealed weapon statute the Court analyzed stated that if a concealed firearm " 'is used in the commission of a crime of violence ..., and the person is a party to the offense, the person is guilty of a second degree felony.' " *Id.* at ¶ 12 (quoting Utah Code Ann. § 76–10–504(3) (1995)). The Court found that the "plain language and structure" of the concealed weapon statute demonstrated that this subsection of the statute "is intended to operate as an enhancement provision, enhancing the penalty for the offense of carrying a concealed firearm when the offense is committed in conjunction with a crime of violence, a separate offense." *Id.* at ¶ 13. Because the concealed weapon statute as a whole "sets forth different levels of offenses depending on the circumstances in which carrying a concealed weapon occurs and on the type of weapon involved"—a structure the Court found to establish "a graduated punishment scale"—the court concluded that the concealed weapon statute was an enhancement statute. *Id.* (quotations and citation omitted).

¶ 16 In *Smith,* the Utah Supreme Court also cited, albeit in a footnote, to Utah's burglary statute as another example of a statute that, by its plain language and structure, qualifies as an enhancement statute. *See id.* at ¶ 11 n. 3. The burglary statute

"defines the crime of burglary as unlawfully entering or remaining in a building with the intent to commit certain offenses, and then specifies that a violation of the burglary statute is a 'separate offense' from any of those offenses so listed." *Id.* (quoting Utah Code Ann. § 76–6–202(3) (2003)) (additional citation omitted). The Court noted that such "language makes it clear that the burglary statute imposes an enhanced penalty on those who would otherwise be considered guilty of the lesser crime of criminal trespass where that crime is committed in conjunction with an intent to commit one of the listed offenses." *Id.* (citation omitted).

¶ 17 The automobile homicide statute under which Defendant was convicted sets forth two degrees of automobile homicide: (1) a third degree felony if a person "caus[es] the death of another" while "operat[ing] a motor vehicle in a negligent manner" and (2) a second degree felony if a person "caus[es] the death of another" while "operat[ing] a motor vehicle in a criminally negligent manner." Utah Code Ann. § 76–5–207(2)(a), (3)(a) (Supp.2005). Significantly, both third degree and second degree automobile homicide also require that while thus operating a motor vehicle the person

(i) has sufficient alcohol in his body that a subsequent chemical test shows that the person has a blood or breath alcohol concentration of .08 grams or greater at the time of the test;

(ii) is under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle; or

(iii) has a blood or breath alcohol concentration of .08 grams or greater at the time of operation.

*Id.* Notably, that part of the automobile homicide statute embodies the exact same element that must be proved to convict of a DUI offense.[9] The State would have us hold

---

9. The DUI statute provides:
 (1) A person may not operate or be in actual physical control of a vehicle within this state if the person:
 (a) has sufficient alcohol in the person's body that a subsequent chemical test shows

that the person has a blood or breath alcohol concentration of .08 grams or greater at the time of the test;
 (b) is under the influence of alcohol, any drug, or the combined influence of alcohol and any

that the automobile homicide statute is an enhancement statute because it enhances the penalty for conduct that would otherwise be unpunishable or that would only be a class A misdemeanor, to a felony if the same conduct occurs while the actor is driving a motor vehicle under the influence of alcohol or drugs.

¶ 18 The State suggests that the automobile homicide statute takes negligent homicide, the causing the death of another while acting with criminal negligence—punished as a class A misdemeanor under Utah's Criminal Code, see Utah Code Ann. § 76–5–206 (2003)—and makes that same criminally negligent conduct a second degree felony if the actor is also operating a motor vehicle while under the influence of alcohol or drugs, i.e., committing DUI as a separate offense. See Utah Code Ann. § 76–5–207(3) (Supp.2005). Such analysis would also mean that the automobile homicide statute makes causing the death of another while acting in a noncriminally negligent manner—not punishable as a crime under Utah's Criminal Code—a third degree felony if the actor is operating a motor vehicle negligently while under the influence of alcohol or drugs, i.e., committing a DUI as a separate offense. See id. § 76–5–207(2)(a).

¶ 19 Admittedly, if we were looking at the automobile homicide statute under the analysis set forth in State v. McCovey, 803 P.2d 1234 (Utah 1990), overruled in part by State v. Smith, 2005 UT 57, 122 P.3d 615, the State might be right. Under the State's argument, the automobile homicide statute appears by its nature, and arguably by its purpose, to operate as an enhancement statute. However, we read Smith to essentially set a presumption that a statute is not an enhancement statute—and should not be construed as such—absent statutory language or structure that clearly indicates otherwise. See

2005 UT 57 at ¶ 11, 122 P.3d 615. We do not see such a "clear" or "explicit indication" in the plain language or structure of the automobile homicide statute that would show that the legislature intended it to operate as an enhancement statute under the Smith analysis. Id.

¶ 20 In fact, by the statute's plain language and structure, the degree of the penalty for the crime of automobile homicide is enhanced only by the mens rea element of the crime, i.e., simple negligence or criminal negligence, not by the fact that the person had the requisite amount of alcohol in his system or was under the influence of alcohol or drugs at the time. Nowhere in the statute is a DUI offense specifically described as a separate offense when committed during the same criminal episode, nor does the presence of the elements of DUI during the crime's commission enhance the penalty for an automobile homicide offense.[10] Instead, a straightforward reading of the statute simply shows that in all cases the evidence essential to prove an automobile homicide offense is inclusive of the evidence necessary to prove a DUI offense. In other words, automobile homicide and DUI present a perfect example of two crimes being " 'such that the greater cannot be committed without necessarily having committed the lesser.' " State v. Hill, 674 P.2d 96, 97 (Utah 1983) (quoting State v. Baker, 671 P.2d 152, 156 (Utah 1983)). And we see no explicit intent that these offenses are in the kind of enhancement relationship described in Smith. Thus, this is an instance where we must say that "as a matter of law[,] they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." Hill, 674 P.2d at 97.

## CONCLUSION

¶ 21 We conclude that Defendant was not denied the right to effective assistance of

drug to a degree that renders the person incapable of safely operating a vehicle; [or]

(c) has a blood alcohol concentration of .08 grams or greater at the time of operation or actual physical control[.] . . . .

Utah Code Ann. § 41–6a–502(1)(a)–(c) (2005).

10. We do note that the statute does enhance a third degree felony conviction for automobile homicide to a second degree felony "if it is subsequent to a conviction" under the DUI stat-

ute. Utah Code Ann. § 76–5–207(2)(b) (Supp. 2005). By the plain language of that provision, however, it does not apply when a DUI offense and an automobile homicide offense are committed in the same criminal episode, but rather, when a person has been convicted of a DUI offense resulting from one criminal episode and then later commits automobile homicide during a separate criminal episode. See id.

counsel when his trial counsel did not seek to suppress the blood draw evidence, because it would have been futile to do so. We conclude, however, that his trial counsel's performance was deficient for failing to request that Defendant's DUI charge be consolidated with the automobile homicide charges. As a natural result of our conclusion that the DUI conviction merged into the automobile homicide convictions, Defendant's counsel was ineffective for failing to seek consolidation of the charges. We therefore reverse Defendant's conviction on the DUI charge and vacate his sentence for that offense. *See id.* at 98 ("When a defendant has been improperly convicted of both a greater and a lesser offense, it is appropriate to regard the conviction on the lesser offense as mere surplusage, which does not invalidate the conviction and sentence on the greater offense."). Otherwise, Defendant's convictions and sentences are affirmed.

¶ 22 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge.