IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100563-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 27, 2012) |
| Christopher Duane Ellis, | ) | |
| | ) | 2012 UT App 272 |
| Defendant and Appellant. | ) | |

-----

Fourth District, Provo Department, 091402191
The Honorable David N. Mortensen

Attorneys:   Margaret P. Lindsay and Matthew R. Morrise, Provo, for Appellant
             Mark L. Shurtleff and Kenneth A. Bronston, Salt Lake City, for Appellee

-----

Before Judges Thorne, McHugh, and Roth.

ROTH, Judge:

¶1     Defendant Christopher Duane Ellis appeals the district court's denial of his motion to suppress evidence he alleges was seized when the detaining officer exceeded the permissible scope of a protective frisk.  We affirm.

¶2     If an officer has "reasonable suspicion that [a] detained individual is armed and dangerous," the officer may conduct a warrantless protective frisk, known as a *Terry* frisk, to discover weapons that "might be used to harm the officer" so as to "ensure officer safety" during the investigative detention.  *State v. Peterson*, 2005 UT 17, ¶¶ 9-10, 110 P.3d 699 (internal quotation marks omitted) (citing *Terry v. Ohio*, 392 U.S. 1, 23-24,

26-27 (1968)). For a *Terry* frisk to be permissible, "the officer's action [must have been] justified at its inception" and the protective frisk must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* ¶ 12 (citing *Terry*, 392 U.S. at 19-20). "Because the only permissible objective of the *Terry* frisk is the discovery of weapons that may be used against the officer . . . , 'a protective search [that] goes beyond what is necessary to determine if the suspect is armed . . . is no[t] . . . valid . . . and [the] fruits [of that search] will be suppressed.'" *Id.* (quoting *State v. Warren*, 2003 UT 36, ¶ 14, 78 P.3d 590).

¶3 "The reasonableness of . . . the frisk [is] evaluated objectively according to the totality of the circumstances." *Warren*, 2003 UT 36, ¶ 14 (citing *Terry*, 392 U.S. at 21). "To determine reasonableness, a court should question whether the facts available to the officer . . . warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* (internal quotation marks omitted). "[T]he officer must be able to point to specific facts which, considered with rational inferences from those facts, reasonably warrant the intrusion." *Id.* "In determining reasonableness, due weight must be given . . . to specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience." *Id.* (alteration in original) (internal quotation marks omitted). "[T]his process allows officers to draw upon their own experience and training to make determinations based on the cumulative facts before them . . . ." *Id.*

¶4 Here, an officer encountered Ellis while investigating a suspected automobile burglary. Upon approaching Ellis, the officer saw "a clip knife in his right pocket." He also noticed that Ellis's pockets were "very bulky." Concerned for his safety, the officer frisked Ellis for weapons.

¶5 The officer began the *Terry* frisk by removing the knife that was clipped on Ellis's right, front pocket. That same pocket was "bulging," so the officer felt the outside of the pocket in an attempt to identify whether the items inside were benign or included things that could be used as weapons. Touching the outside of the pocket, the officer felt "numerous items," several of which were "long objects that seemed to be sharp" or pointed. Concerned that these objects might be weapons or objects that could be used as weapons, such as pens, the officer reached into Ellis's pocket to remove those items. While his hand was in Ellis's pocket, the officer felt several other objects, such as "pouches and all kinds of stuff." Because "there were so many items in the pocket . . . it was hard to . . . pull out just . . . one thing," so the officer "just started taking everything

out so [he] could . . . determine what . . . was dangerous and what wasn't." The officer emptied the pocket in about "two or three handfuls" of items that included another knife, pens, papers, and a couple of "pouches." One of those pouches was described as a "knife sheath"--about three inches long, one to two inches wide, and the thickness of a pencil. In the officer's experience, such pouches could contain weapons like "[r]azor blades, Leatherman tools, small pen knives--things that have sharps on them" and can be used as weapons.[1]

¶6     Without opening or manipulating that pouch, another officer who had joined the investigation could see that it contained an object that resembled a glass methamphetamine pipe. When that officer asked what was in the pouch, Ellis admitted that it contained drug paraphernalia and agreed that the pouch could be searched. That officer then opened the pouch and found that it did in fact contain a glass methamphetamine pipe. On further search, drugs were found in Ellis's possession. After charges were filed, Ellis filed a motion to suppress both the paraphernalia and the drugs. The district court's denial of that motion is the subject of this appeal.

¶7     Ellis does not dispute that, under the circumstances, the officer was justified in detaining him and conducting a protective *Terry* frisk, nor does he dispute that the officer was justified in expanding the *Terry* frisk by reaching into his pocket to further investigate the items felt during the pat down. Rather, Ellis argues that the officer exceeded the permissible scope of the *Terry* frisk by removing everything from Ellis's pocket--more particularly, by removing objects from Ellis's pocket that the officer did not believe to be weapons. However, in making this argument, Ellis concedes that the officer could investigate the objects in his pocket that the officer reasonably believed to be weapons or to contain a weapon, such as the long pointed objects and the pouch or knife sheath. Indeed, Ellis does not dispute that the officer felt the pouch in Ellis's pocket during the *Terry* frisk and identified that pouch as an object that could contain a weapon. Ellis accordingly concedes that if the officer reasonably believed that the pouch contained a weapon, removal of the pouch from his pocket would fall within the scope of a *Terry* frisk. Rather, Ellis's argument is a much more narrow challenge to the

---

[1]It is unclear from the officer's testimony whether the other pouch contained the knife that was removed from Ellis's pocket or whether the knife was unsheathed and the other pouch was an additional item in the pocket.

facts supporting the officer's belief that the pouch contained a weapon. Specifically, he argues that

> [the o]fficer . . . did not testify that he believed the black knife sheath which contained the meth pipe to be a weapon. . . . [The o]fficer . . . testified that Ellis's pockets contained pouches, and that these pouches were a cause for concern because they could contain weapons. However, whether the pouches *could* contain weapons is not the relevant question. The question is, rather, whether [the o]fficer . . . believed that the pouches *did* contain weapons, and in particular, whether he believed that the black knife sheath which contained the meth pipe was a weapon. . . . [The o]fficer . . . did not testify that he believed that the sheath was a weapon or contained a weapon. [The o]fficer . . . did not testify to the contours of the sheath, or provide any specific, articulable facts which indicated that that particular sheath was a weapon or contained a weapon.

Thus, Ellis argues, in effect, that the officer did not articulate sufficient facts to support a belief that the pouch actually contained a weapon.

¶8     Ellis's distinction between whether the officer thought the pouch "*could* contain [a] weapon[]" and whether he "believed that the pouch[] *did* contain [a] weapon[]" is of little significance, however, because the allowable scope of a *Terry* frisk is determined by the reasonableness of the officer's belief that an object might be a weapon or might contain one, not by the degree of his certainty that an object is or contains a weapon. *See generally State v. Zearley*, 468 N.W.2d 391, 392 (N.D. 1991) ("Weapon verification is essential if safety is to be preserved and a potentially volatile situation neutralized. We cannot impose a condition of certainty that the object is a weapon before allowing an officer to continue the . . . search . . . . We can impose a condition that an officer's belief that the object is a weapon be reasonably grounded and not a mere subterfuge for a random search." (internal quotation marks omitted)); *North Dakota v. Heitzmann*, 231 ND 136, ¶ 13, 632 N.W.2d 1, 8 (citing *Zearley*, 468 N.W.2d at 392 ("[W]hen a[] . . . search reveals the presence of an object of a size and density that reasonably suggests the

object might be a weapon, the searching officer is entitled to continue the search . . . in order to determine whether the object is in fact a weapon.").

¶9     Here, the officer testified that in his experience, pouches, such as the pouch he felt and then removed from Ellis's pocket, commonly contain weapons. The officer's identification of the pouch and the nature of his experience with such pouches gives his belief that this particular pouch might contain a weapon a basis in reason. That belief was further supported by the attendant circumstances: the officer had already observed a knife in plain sight in the same pocket and then detected by feel other hard, pointed objects that, based on his experience, could have been weapons or objects that could be used as weapons. Some of those objects turned out to be weapons or potential weapons when they were removed from the pocket and identified as another knife and several pens. Under the totality of the circumstances, then, the officer was justified in removing the pouch from Ellis's pocket as part of the *Terry* frisk because he had a reasonable concern that it could contain another weapon. *See State v. Warren*, 2003 UT 36, ¶ 14, 78 P.3d 590 ("The reasonableness of . . . the frisk [is] evaluated objectively according to the totality of the circumstances. . . . In determining reasonableness, due weight must be given . . . to specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience. . . . [T]his [approach] allows officers to draw upon their own experience and training to make determinations based on the cumulative facts before them that may elude an untrained person." (second alteration in original) (citations and internal quotation marks omitted)).

¶10    Having reached this conclusion, we need not address the broader contention raised by Ellis that the officer expanded the search beyond the permissible scope of a *Terry* frisk by removing everything from Ellis's pocket, including items that the officer did not believe to be weapons. *See generally United States v. Campa*, 234 F.3d 733, 736, 739 (1st Cir. 2000) (concluding that an officer expanded a search beyond the appropriate scope of a *Terry* frisk by intentionally removing objects from the defendant's pocket-- particularly, a wallet, which yielded the contraband at issue--where the officer did not even assert that he thought that object was or contained a weapon); *State v. Fowler*, 883 P.2d 338, 339-40 (Wash. Ct. App. 1994) (concluding that an officer expanded a search beyond the appropriate scope of a *Terry* frisk by intentionally removing "two soft objects of indeterminate shape" that the officer knew were not weapons and turned out to be cigarette packages containing drugs). We do not reach this issue, however, because we have already concluded that the officer was justified in removing the pouch,

which he identified independently from the indistinguishable mass of objects that he also removed from the pocket. Thus, the contraband that Ellis was charged with possessing was not extracted from that mass but was found in the pouch, the discovery of which then led to the discovery of other contraband.

¶11 Ellis also argues that the officers exploited an illegal *Terry* frisk to obtain Ellis's consent to further search. However, because we have concluded that the officer did not exceed the scope of the *Terry* frisk, we need not address this argument.

¶12 We affirm.

_____
Stephen L. Roth, Judge

-----

¶13 WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Carolyn B. McHugh, Judge