2014 UT App 34

**STATE of Utah, Plaintiff and Appellee,**

v.

**Phillip Don BURDICK, Defendant and Appellant.**

**No. 20110878–CA.**

Court of Appeals of Utah.

Feb. 13, 2014.

---

Samuel P. Newton, Attorney for Appellant.

Sean D. Reyes and Kenneth A. Bronston, Salt Lake City, Attorneys for Appellee.

Judge MICHELE M. CHRISTIANSEN authored this Opinion, in which Judge CAROLYN B. MCHUGH concurred in the result. Judge JAMES Z. DAVIS concurred in part and dissented in part, with opinion.

## Opinion

CHRISTIANSEN, Judge:

¶ 1 Defendant Phillip Don Burdick appeals from his convictions for possession of a controlled substance in a drug-free zone, possession of drug paraphernalia, and interference with an arresting officer. We affirm.

## BACKGROUND

¶ 2 On August 11, 2010, detectives with the Riverdale City Police Department went to an address in Ogden, Utah, to search for a suspect.[1] The person who answered the door of the residence, Mirowski, consented to the detectives' request to enter the house. Once inside, the detectives saw two other men in the living room of the house: a known drug user, Temple, who was half asleep on the couch, and Defendant, "in a daze from sleeping." While one detective went with Mirowski to look for the suspect elsewhere in the house, Detective Warren stayed in the living room and began a "casual conversation" with Defendant and Temple. During this conversation, Detective Warren noticed several knives, a screwdriver, and a marijuana pipe on a toolbox on the floor in front of Temple. When Mirowski and the other detective returned to the living room,

---

1. In reviewing the trial court's ruling on a motion to suppress evidence, we recite the relevant facts in the light most favorable to the trial court's findings. *State v. Montoya*, 937 P.2d 145, 147 (Utah Ct.App.1997). We recite all other facts in a light most favorable to the jury's verdict. *See State v. Hamilton*, 2003 UT 22, ¶ 18, 70 P.3d 111.

Mirowski admitted that the marijuana pipe belonged to him. Detective Warren noticed that Defendant was "moving a lot," and that he was "starting to get agitated and nervous and kind of fidgeting around." At the same time, Temple "kind of sat up" and Detective Warren saw beneath him a bag of methamphetamine and a methamphetamine pipe.

¶ 3 Detective Warren continued to notice Defendant "reaching around just agitated and making further movements." As Defendant "began to mov[e], he lifted his leg up and underneath his leg was a knife." Detective Warren saw the knife, "a hunting buck knife type," and he asked Defendant to stand up so he could take the knife for the detectives' safety. Detective Warren then seized the knife and moved it to a different area. Detective Warren asked Defendant whether he had anything else on his person that the detective needed to worry about, and asked for permission to search Defendant. At that time, Defendant refused to allow the search, so Detective Warren asked him to sit down and hold still.

¶ 4 The detectives obtained Mirowski's consent to continue searching the residence for narcotics, and Detective Warren briefly left the living room with Mirowski. As Detective Warren came back through the living room, Defendant "was moving around nervously again, agitated, like he was trying to get into his pockets, possibly access something." Detective Warren told Defendant that he was making him nervous and again asked Defendant for permission to search his person, "just for weapons to make sure you don't have nothing that's going to hurt me?" This time, Defendant consented to a search for weapons. Defendant then stood up, turned away from Detective Warren, and put his hands on top of his head. Before searching him, Detective Warren asked Defendant, "Do you have anything that's going to poke me, stick me, or hurt me?" Defendant said no.

¶ 5 Detective Warren patted the waistband of Defendant's pants and his pockets and located an object he identified as a syringe in Defendant's right pocket. Detective Warren

asked why Defendant did not tell him about the syringe. Defendant became upset and yelled, "I didn't f'ing say you could search me for syringes!" Detective Warren then advised Defendant that he was under arrest, took him into custody, and sat him in a chair.[2] Before seating Defendant in the chair, Detective Warren searched around the chair and saw nothing there. Detective Warren's attention was drawn to Mirowski and Temple for a time, but he soon saw that Defendant had resumed his furtive movements. When Detective Warren asked him what he was doing, Defendant complained about the handcuffs he was wearing. Detective Warren checked the handcuffs and conducted a second search of the area around Defendant "to make sure he wasn't discarding or accessing anything."

¶ 6 As the detectives resumed their investigation, Defendant continued to make the same furtive movements. In response, Detective Warren asked Defendant to stand up. He then walked Defendant a few steps from the chair and saw on the floor at Defendant's feet "a pink bag with a white crystal substance right in front [of the chair] where it was not there clearly before." As Detective Warren picked up the pink bag, Defendant said, "God, damn it." The bag contained methamphetamine. Defendant admitted that he was a methamphetamine user but denied that the methamphetamine was his. However, when Detective Warren suggested that he might ask Temple or Mirowski to whom the bag belonged, Defendant protested, "Well don't go do that."

¶ 7 The State charged Defendant with possession of a controlled substance in a drug-free zone, possession of drug paraphernalia, and interference with an arresting officer. Following his preliminary hearing, Defendant filed a pro se motion to suppress evidence, despite his counsel's position that there was no legal basis for such a motion. After a hearing on that motion, and again acting pro se, Defendant filed a revised version of his motion, re-captioned as a motion to dismiss. Defendant claimed that Detective Warren's search of his person was a

---

2. At trial, Detective Warren explained that he was placing Defendant under arrest for possession of drug paraphernalia based on his possession of the syringe.

violation of the "stop and frisk" doctrine, that he had consented only to a weapons search, and that the discovery of the methamphetamine was fruit of the poisonous tree. The trial court denied Defendant's motion, ruling that the search was not a "stop and frisk" but rather a consensual search. The trial court also determined that Detective Warren's seizure of the syringe was justified because the syringe could be used as a weapon and that the bag of methamphetamine was in plain view. Defendant attempted to file another pro se motion to dismiss based on Utah Code section 77–9–3, arguing that the detectives' investigation outside their statutory jurisdiction exceeded the scope of their law enforcement authority. However, the trial court apparently never addressed or ruled on this pro se motion.

¶ 8 At trial, the jury found Defendant guilty on all counts. Defendant appeals, arguing that the trial court erred in denying his motion to suppress evidence and that he received ineffective assistance of counsel.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 Defendant argues that the trial court erred in denying his motion to suppress evidence. "We review for clear error the factual findings underlying a district court's decision to deny a motion to suppress. Whether the district court correctly denied the motion to suppress, however, is a legal conclusion that we review for correctness." *State v. Applegate*, 2008 UT 63, ¶ 5, 194 P.3d 925 (citations omitted).

¶ 10 Additionally, Defendant argues that his trial counsel was ineffective for failing to raise his previously filed pro se motion to dismiss based on the officer's lack of jurisdiction to conduct the search. Defendant also argues that his trial counsel was ineffective for failing to move for a directed verdict, because he asserts that insufficient evidence was submitted to demonstrate that he constructively possessed a controlled substance. When ineffective assistance of counsel claims are raised for the first time on appeal, we decide the issues raised as a matter of law. *See State v. C.D.L.*, 2011 UT App 55, ¶ 12, 250 P.3d 69.

## ANALYSIS

### I. The Trial Court Correctly Denied Defendant's Motion to Suppress Evidence.

¶ 11 Defendant argues that the trial court erred in denying his motion to suppress evidence because he gave consent only for Detective Warren to search him for weapons and Detective Warren's pat down of Defendant went beyond what is legally allowable in a weapons frisk. Defendant also argues that his subsequent arrest for possession of the drug paraphernalia found during that weapons frisk was not based on probable cause, because the syringe might have served a legitimate medical purpose. Defendant thus contends that the bag of methamphetamine was discovered subsequent to an illegal search and arrest and is therefore "fruit of the poisonous tree" that should have been suppressed. In considering Defendant's motion to suppress, the parties stipulated to the trial court's use of the facts presented at the preliminary hearing.

### A. Detective Warren's Pat Down Did Not Exceed the Permissible Scope of a Search for Weapons.

[4, 5] ¶ 12 Defendant argues that Detective Warren's pat down exceeded the permissible scope of a search for weapons under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, an officer may perform a protective frisk of an individual whom the officer reasonably suspects is " 'armed and presently dangerous' " but only for the purpose of discovering " 'weapons which might be used to harm the officer or others nearby.' " *State v. Peterson*, 2005 UT 17, ¶ 9, 110 P.3d 699 (quoting *Terry*, 392 U.S. at 24, 26, 88 S.Ct. 1868). "Because the only permissible objective of the *Terry* frisk is the discovery of weapons that may be used against the officer or others, a protective search [that] goes beyond what is necessary to determine if the suspect is armed . . . is no longer valid under *Terry* and its fruits will be suppressed." *Id.* ¶ 12 (alteration and omission in original) (citation and internal quotation marks omitted); *see also Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130,

124 L.Ed.2d 334 (1993). Defendant does not argue that it was improper for Detective Warren to conduct the pat down. Our inquiry is therefore focused on the proper scope of the pat down under these circumstances.

■■■ ¶ 13 We first note that the trial court's finding that Defendant consented to a search of his person for weapons is not challenged on appeal. Thus, the pat down performed by Detective Warren was a consensual search and is not directly subject to the requirements of *Terry*. Rather, the scope of a consensual search is governed by an objective standard of what a "reasonable person [would] have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Nevertheless, the object of both a *Terry* frisk and the consent search at issue here is to determine whether a suspect is in possession of any weapons that pose a threat to officer safety. And while the scope of a *Terry* frisk is less expansive than that of a full search, we find *Terry* and its progeny instructive in analyzing the permissible scope of a weapons search under these circumstances. *See Terry*, 392 U.S. at 26, 88 S.Ct. 1868 (explaining that a *Terry* frisk "may realistically be characterized as something less than a 'full' search").[3]

■■■ ¶ 14 A *Terry* frisk "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* The United States Supreme Court in *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), explained that a frisk for weapons under *Terry* does not include "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket—a

pocket which the officer already knew contained no weapon." *Id.* at 378, 113 S.Ct. 2130 (citation and internal quotation marks omitted). However, if an officer "lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Id.* at 375, 113 S.Ct. 2130.

■■■ ¶ 15 Defendant claims that Detective Warren manipulated his clothing to discern that his pocket contained a syringe and in so doing exceeded the scope of a *Terry* frisk for discovery of a weapon. At the preliminary hearing, Detective Warren testified,

> I ... patted on top of [Defendant's] right pocket, and when I did that, I felt an object—and granted I'm always careful whenever I deal with people because needles and things like that. And so I patted real careful, and when I patted him and felt the object, I identified it as a syringe. So I asked him—I said, "Why didn't you tell me you had a syringe? You know, it could stick me."

Because only Detective Warren testified at the preliminary hearing, the trial court determined that his testimony represented the facts of the case for purposes of the suppression motion. The trial court found that "[Detective] Warren felt an object in [Defendant's] pocket which he immediately recognized as a syringe from the outside of the clothing."

¶ 16 Detective Warren's description of the pat down and the trial court's findings based on that testimony fall within the confines of a permissible *Terry* frisk. Detective Warren

---

3. Consent to search for specific items generally entails consent to search "areas and containers that might reasonably contain those items." *United States v. Romero*, 247 Fed.Appx. 955, 965 (10th Cir.2007). Consent to search for weapons on the person, unless otherwise limited, would therefore intuitively extend beyond a mere pat down to a search of the pockets or other areas where a weapon may be found. *See, e.g., Stagg v. State*, 297 Ga.App. 640, 678 S.E.2d 108, 111 (2009) (concluding that the defendant had not "only consented to a pat-down" but had "agreed to a general request for consent to search his

person for guns, knives, needles, or weapons" that extended to a search of the contents of his pockets); *State v. Quale*, 225 Or.App. 461, 201 P.3d 273, 278 (2009) (concluding that under objective evaluation of consent, a search for weapons included "any place that weapons might be found, including [the defendant's] backpack"). However, because we ultimately conclude that Detective Warren's pat down complied with the more stringent requirements of *Terry*, we need not address the precise scope of Defendant's consent here.

testified only that he patted the outside of Defendant's clothing in order to discern that the object in his pocket was a syringe, and nothing in this testimony suggests that he manipulated Defendant's clothing or his pocket. Defendant has failed to direct this court to any record evidence that Detective Warren's. actions were anything other than patting the outside of Defendant's pocket. He asserts only that Detective Warren "potentially said" he manipulated some part of Defendant's clothing in a police report that is not in the record before this court. And Defendant's argument that Detective Warren's "real careful" pat down represents an intrusive and impermissible search is belied by the context of Detective Warren's testimony, which makes clear that he was taking care to avoid contact with any hidden needles, not carefully inspecting Defendant's pocket.

¶ 17 While Defendant argues that it would have been impossible for Detective Warren to identify the object in his pocket as a syringe from a mere pat down, Detective Warren needed only a reasonable belief that the object he discovered was a syringe that could be used as a weapon to investigate further. *See United States v. Harris,* 313 F.3d 1228, 1238 (10th Cir.2002); *see also State v. Ellis,* 2012 UT App 272, ¶ 8, 287 P.3d 471 ("[T]he allowable scope of a *Terry* frisk is determined by the reasonableness of the officer's belief that an object might be a weapon or might contain one, not by the degree of his certainty that an object is or contains a weapon."). We are not convinced that a syringe is so nondescript that Detective Warren could not have reasonably believed he had discovered a syringe through a pat down. *See, e.g., State v. Hunter,* 615 So.2d 727, 734 (Fla.Dist.Ct.App.1993) ("We conclude that the officer was justified in taking the item out of [the defendant's] pocket as a result of a legitimate frisk for weapons and the officer's reasonable belief that the object she felt was a syringe that could be used as a weapon."); *State v. Eells,* 72 Or.App. 492, 696 P.2d 564, 565 (1985) (observing that the officer

discovered a syringe in the defendant's pocket while conducting a frisk for weapons); *Moore v. Commonwealth,* 25 Va.App. 277, 487 S.E.2d 864, 866, 869 (1997) (concluding that an officer's *Terry* frisk, during which the officer "detected and removed from [the defendant's] pocket an unsheathed syringe," was reasonable under the circumstances); *see also Dickerson,* 508 U.S. at 376, 113 S.Ct. 2130 ("The very premise of *Terry,* after all, is that officers will be able to detect the presence of weapons through the sense of touch and *Terry* upheld precisely such a seizure.").

¶ 18 Given Detective Warren's testimony relating his extensive experience conducting pat downs over seven years of law enforcement work, we are not persuaded by Defendant's argument that it would have been impossible for Detective Warren to identify the syringe from a pat down without exceeding the bounds of *Terry.* And once Detective Warren identified the syringe under these circumstances—given the discovery of a knife under Defendant's leg, Defendant's furtive movements, and the presence of drugs and the other weapons in the room—he was justified in removing the object from Defendant's pocket to ascertain whether what he believed to be a syringe had an attached needle or was otherwise a weapon that could harm him or another. *See Hunter,* 615 So.2d at 734.

¶ 19 Because Defendant has not shown that Detective Warren did more than "pat[ ] down a suspect's outer clothing and feel[ ] an object whose contour or mass [made] its identity immediately apparent," *see Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), we conclude that Detective Warren's pat down of Defendant did not exceed the scope of a *Terry* frisk or the scope of Defendant's consent to search for weapons.

B. Defendant Has Not Demonstrated Error in the Trial Court's Determination that a Syringe Can Be Used as a Weapon.[4]

 ¶ 20 Defendant argues that the trial court's determination that a syringe can be

---

4. The analysis set forth in part I.B. represents the reasoning of only Judge Christiansen, as neither Judge McHugh nor Judge Davis concurs in the reasoning of this section of the lead opinion.

However, because Judge McHugh concurs in the result, our ultimate conclusion that all of Defendant's convictions should be affirmed is unaffected.

used as a weapon "neglects the statute's plain language" that defines a "dangerous weapon" and is therefore in error. Defendant asserts that a weapon for purposes of a *Terry* frisk is defined by Utah Code section 76–10–501, which provides, " 'Dangerous weapon' means an item that in the manner of its use or intended use is capable of causing death or serious bodily injury." Utah Code Ann. § 76–10–501(6)(a) (LexisNexis 2012). Defendant argues that a syringe does not meet the statutory definition of a weapon under this section because syringes are most commonly used for medical purposes and produce "almost nonexistent" wounds, and the syringe in this case was not used for any criminal conduct. *See id.* § 76–10–501(6)(b) (setting forth factors to be used in determining whether an object is a dangerous weapon under Utah Code section 76–10–501(6)(a), including the "character of the wound produced," "the manner in which the . . . object . . . was used," and "the other lawful purposes for which the . . . object . . . may be used").

¶ 21 Defendant's argument neglects the plain language of Utah Code section 76–10–501, which provides that the definitions in that section are specific to title 76, chapter 10, part 5 of the Utah Code, which sets out offenses related to the transfer, possession, or modification of weapons. *See id.* §§ 76–10–500 to –532. However, none of the weapon offenses governed by these provisions are implicated in a protective *Terry* frisk, and the definition of a dangerous weapon contained in that part of the Utah Code does not control here. I therefore do not agree that the trial court's determination that a syringe can be used as a weapon is in conflict with or otherwise foreclosed by Utah Code section 76–10–501. *Terry* itself does not define a weapon, but allows an officer to seize or neutralize "weapons which might be used to harm the officer or others nearby" or that "might be used to assault" the officer. *Terry v. Ohio*, 392 U.S. 1, 26, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

¶ 22 Defendant has advanced no other challenge to the trial court's determination that the syringe could be used as a weapon and that Detective Warren was therefore permitted to remove the syringe from Defendant's pocket.[5] "On appeal, the appellant is required to clearly define the issues and provide accompanying argument and authority; a reviewing court is not simply a depository in which the appealing party may dump the burden of argument and research." *State v. Honie*, 2002 UT 4, ¶ 67, 57 P.3d 977. And we may not "assume the role of an advocate by researching all applicable law and searching the entire record for each and every indication of possible or potential error." *Id.* (citation and internal quotation marks omitted). Because Defendant has failed to meet his burden of demonstrating error, I would affirm the trial court's determination that a syringe can be used as a weapon without expressing an opinion on the separate question of whether a syringe is necessarily a dangerous weapon under Utah law.[6]

---

5. Defendant also argues that even if Detective Warren identified the syringe in his pocket, he was not justified in searching further or seizing the syringe because syringes have legitimate medical uses. He argues that the syringe's identity as contraband was therefore not immediately apparent, as required by *Minnesota v. Dickerson*, 508 U.S. 366, 375–76, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Under the "plain feel" doctrine of *Dickerson*, if an object's incriminating character is not immediately apparent, further search or seizure of the object is not justified. *See id.* While Detective Warren ultimately arrested Defendant for possession of drug paraphernalia, the trial court ruled that the seizure of the syringe was justified because Detective Warren identified it as a weapon, not because he identified it as contraband by its "plain feel." Defendant's argument therefore fails to address the basis of the trial court's ruling, and we need not address it further. *See Golden Meadows Props., LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375.

6. The dissent asserts that the trial court's ruling that a syringe can be used as a weapon is "impermissibly broad" and not supported by the record in this case, because there is no evidence in the record that a needle was attached to the syringe. While such a challenge might have merit in an appropriate case, Defendant simply has not raised such a challenge to the sufficiency of the evidence supporting the trial court's finding or even asserted in his brief that a needle was not attached to the syringe. Even assuming that his challenge to the trial court's finding under the purported statutory definition of a dangerous weapon could be read to encompass such an argument, Defendant has not directed this court

## C. Defendant's Probable Cause Argument Is Not Preserved.

¶ 23 Defendant next argues that Detective Warren did not have probable cause to arrest him for possession of drug paraphernalia, because a syringe can be used for medical purposes and is therefore not per se paraphernalia or contraband. *See State v. Nimer*, 2010 UT App 376, ¶ 10, 246 P.3d 1194 ("Because hypodermic needles and syringes have legitimate medical purposes, ... mere possession does not establish probable cause that they are drug paraphernalia."). However, Defendant's argument that Detective Warren did not have probable cause to arrest him for possessing drug paraphernalia is foreclosed, as the State points out, because Defendant failed to raise this argument before the trial court and failed to argue plain error or exceptional circumstances on appeal.

¶ 24 "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. To preserve an issue for appeal, the issue must be specifically and timely raised before the trial court in such a way that the trial court has an opportunity to rule on the issue, and "the challenging party must introduce supporting evidence or relevant legal authority." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. "[T]he preservation rule applies to every claim, including constitutional questions, unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred." *Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (citations and internal quotation marks omitted).

¶ 25 A review of Defendant's pro se motion and the transcript from the March 2, 2011 suppression hearing demonstrates that Defendant argued only that the scope of the pat down went beyond what *Terry* allows. On appeal, Defendant suggests that, considering the leniency this court should afford him as a pro se criminal defendant, Defendant sufficiently preserved his probable cause claim by filing his pro se motion. Our "approach to pro se litigants seeks to balance the procedural demands of litigation and the rights of unrepresented parties." *State v. Winfield*, 2006 UT 4, ¶ 19, 128 P.3d 1171. Thus, we recognize that Defendant should be "accorded every consideration that may reasonably be indulged." *Id.* (citation and internal quotations marks omitted). Nevertheless, "a party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar." *Id.* (citation and internal quotation marks omitted). Thus, "even though this court 'generally is lenient with pro se litigants' and is 'understandably loath to sanction them for a procedural misstep here or there,' we cannot advocate on their behalf or ignore the requirements necessary to preserve an issue for appeal." *Tolle v. Fenley*, 2006 UT App 78, ¶ 70, 132 P.3d 63 (Thorne, J., concurring) (quoting *Lundahl v. Quinn*, 2003 UT 11, ¶ 4, 67 P.3d 1000).

¶ 26 Even granting Defendant some leniency due to his pro se status, he simply did not argue to the trial court that Detective Warren lacked probable cause to arrest him for possessing suspected drug paraphernalia even if the seizure of the syringe was proper. Thus, the trial court had no opportunity to rule on the issue of whether Detective Warren's discovery of the syringe gave rise to probable cause for an arrest.

¶ 27 Moreover, while Defendant appeared pro se before the trial court at the suppression hearing, he was represented by counsel at trial and is represented by counsel on appeal.[7] His appellate counsel could have

---

to any record evidence that the syringe did *not* have a needle. It is Defendant's burden on appeal to demonstrate error in the trial court's ruling. To do so he must "clearly define the issues and provide accompanying argument and authority," *State v. Honie*, 2002 UT 4, ¶ 67, 57 P.3d 977, and provide an adequate record for review, *State v. Pritchett*, 2003 UT 24, ¶ 13, 69 P.3d 1278 ("[W]hen an appellant fails to provide an adequate record on appeal, we presume the regularity of the proceedings below."). Under these circumstances and given Defendant's limit-

ed briefing of his challenge to the trial court's determination, I cannot "assume the role of an advocate" and grant relief to Defendant on the basis of an argument he has neither raised nor adequately supported. *See Honie*, 2002 UT 4, ¶ 67, 57 P.3d 977 (citation and internal quotation marks omitted).

7. Indeed, Defendant was represented by counsel at the time he attempted to file his motion to suppress. However, because counsel did not believe that Defendant's proposed motion was well

argued plain error or exceptional circumstances but did not. *See Delaney v. Labor Comm'n*, 2008 UT App 141U, para. 5, 2008 WL 1748304 (declining to depart from our preservation rule where appellate counsel for a previously pro se litigant did not argue plain error or exceptional circumstances on appeal). Accordingly, we decline to review Defendant's challenge to the legality of his arrest.

¶ 28 Because we determine that Detective Warren's pat down and subsequent arrest of Defendant were proper, we need not reach Defendant's argument that the bag of methamphetamine should be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Accordingly, we conclude that the trial court did not err in denying Defendant's motion to suppress evidence.

II. Defendant's Trial Counsel Was Not Ineffective for Failing to Raise Defendant's Previously Filed Pro Se Motion to Dismiss.

■■■ ¶ 29 Defendant argues that his trial counsel was ineffective in failing to formally pursue Defendant's pro se motion to dismiss based on the detectives' alleged lack of jurisdiction to conduct their investigation.[8] To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at

688, 104 S.Ct. 2052. This showing requires the defendant to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. To establish the prejudice prong of an ineffective assistance of counsel claim, the defendant "must show that a reasonable probability exists that, but for counsel's error, the result would have been different." *State v. Millard*, 2010 UT App 355, ¶ 18, 246 P.3d 151 (citation and internal quotation marks omitted).

¶ 30 "[T]he burden of proving that counsel was ineffective is placed firmly upon the defendant." *State v. C.D.L.*, 2011 UT App 55, ¶ 39, 250 P.3d 69. "If a defendant is aware of any 'nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective,' defendant bears the primary obligation and burden of moving for a temporary remand." *State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92 (quoting Utah R.App. P. 23B). "Otherwise, an inadequate record, even one riddled with ambiguities, deficiencies, and the like, 'will be construed in favor of a finding that counsel performed effectively.'" *C.D.L.*, 2011 UT App 55, ¶ 39, 250 P.3d 69 (quoting *Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92).

■■■ ¶ 31 Specifically, Defendant argues that the Riverdale City police detectives were conducting a Riverdale City investigation in Ogden City without Ogden City's cooperation as required by Utah Code section 77–9–3.[9] He contends that "there is no evidence from the record that the officers were working in cooperation with the local authority as required for [Utah Code section

---

founded, the trial court allowed counsel to withdraw so that Defendant could proceed with his motion pro se. The trial court then appointed new counsel for Defendant shortly after the hearing on Defendant's motion.

8. Defendant does not argue that the trial court erred in declining to rule on his pro se motion, perhaps recognizing that "[w]hen a defendant is represented by counsel, he generally has no authority to file pro se motions, and the court should not consider them." *State v. Wareham*, 2006 UT App 327, ¶ 33, 143 P.3d 302 (citation and internal quotation marks omitted).

9. Section 77–9–3 provides, in relevant part,

(1) Any peace officer authorized by any governmental entity of this state may exercise a peace officer's authority beyond the limits of such officer's normal jurisdiction as follows:

. . . .

(c) when participating in an investigation of criminal activity which originated in the officer's normal jurisdiction in cooperation with the local authority. . . .

Utah Code Ann. § 77–9–3 (LexisNexis 2012).

77–9–3(1)(c) ]." (Internal quotation marks omitted.)

¶ 32 The State responds that Defendant has failed to demonstrate from the record that the detectives were *not* working in cooperation with Ogden City. In his reply brief, Defendant asserts,

> The [detectives] did not seek cooperation from Ogden City. No Ogden police officers were present. They went to the address alone. It is the State, rather than [Defendant], that seeks to assume the officers must somehow have obtained consent from Ogden City. Nothing in the record supports that assertion. The officers never called Ogden City, nor were Ogden police officers present at the scene—all indicators of a cooperative police investigation.

¶ 33 Defendant assumes that the detectives did not cooperate with the Ogden police because the Ogden police were not present during the investigation. He reads into the record that the detectives did not call, obtain consent from, or otherwise seek cooperation from the Ogden police. But, in fact, the record is silent as to whether the detectives sought cooperation from the Ogden police. That deficiency in the record was Defendant's responsibility to correct on appeal. *See Litherland*, 2000 UT 76, ¶ 17, 12 P.3d 92. We must therefore construe this omission in the record in favor of a finding that the Defendant's motion would have been unavailing. Counsel therefore did not perform deficiently in declining to pursue Defendant's pro se motion to dismiss.

### III. Trial Counsel Was Not Ineffective for Failing to Move for a Directed Verdict.

¶ 34 Finally, Defendant argues that his trial counsel was ineffective for failing to move for a directed verdict at the close of the State's case because there was insufficient evidence presented at trial that he constructively possessed a bag of methamphetamine. As stated, to succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984). However, "[i]t is well settled that counsel's performance at trial is not deficient if counsel refrains from making futile objections, motions, or requests." *State v. Perez–Avila*, 2006 UT App 71, ¶ 7, 131 P.3d 864 (citing *State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546).

¶ 35 "A directed verdict should not be granted if, upon reviewing the evidence and all inferences that can be reasonably drawn from it ... some evidence exists from which a reasonable jury could find that the elements of the crime had been proved beyond a reasonable doubt." *State v. C.D.L.*, 2011 UT App 55, ¶ 15, 250 P.3d 69 (omission in original) (citation and internal quotation marks omitted). Thus, if the State presented "no competent evidence" from which the jury could find that Defendant had constructively possessed the methamphetamine, then trial counsel "should have moved for a directed verdict, and failure to do so would likely constitute deficient performance." *See id.* (citations and internal quotation marks omitted). Conversely, if the State presented "some evidence ... from which a reasonable jury could find" that constructive possession had been proven beyond a reasonable doubt, "a directed verdict could not properly be granted" and trial counsel's decision not to raise a futile motion for a directed verdict would not be deficient performance. *See id.* (omission in original); *see also Perez–Avila*, 2006 UT App 71, ¶ 7, 131 P.3d 864. In determining whether a motion for directed verdict could have been granted, we view the evidence presented at trial in the light most favorable to the State. *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183.

¶ 36 "To establish constructive possession, the State must 'prove that there was a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug.'" *State v. Gonzalez–Camargo*, 2012 UT App 366, ¶ 17, 293 P.3d 1121 (quoting *State v. Workman*, 2005 UT 66, ¶ 31, 122 P.3d 639). "Whether a sufficient nexus exists 'depends upon the facts and circumstances of each case.'" *Id.* (quoting *Workman*, 2005 UT 66,

¶ 31, 122 P.3d 639). In determining whether the nexus in a particular case is sufficient, several factors may be important, including ownership or occupancy of the residence where the drugs were found, the "presence of [the] defendant at the time drugs were found," the "defendant's proximity to the drugs," the defendant's "previous drug use," "incriminating statements or behavior" by the defendant, and the "presence of drugs in a specific area where the defendant had control." *Workman*, 2005 UT 66, ¶ 32, 122 P.3d 639.

¶ 37 Defendant maintains that the evidence introduced at trial was insufficient to establish that there was a nexus between himself and the bag of methamphetamine sufficient to satisfy constructive possession. However, the following relevant evidence was introduced at trial: Detective Warren located a syringe, which can be used to inject methamphetamine, in Defendant's pocket; Defendant was persistently fidgety and made furtive movements when the detectives were present; Detective Warren found the bag of methamphetamine by Defendant's feet, where Defendant had been sitting, in an area that Detective Warren had previously searched and cleared; Defendant admitted that he was a methamphetamine user; Defendant said "God, damn it" when Detective Warren picked up the bag of methamphetamine; and Defendant indicated to Detective Warren that he did not want Detective Warren to ask the other people at the residence to whom the bag of methamphetamine belonged. This evidence was sufficient to send the question of constructive possession to the jury.

¶ 38 Defendant argues that each circumstance in isolation is insufficient to demonstrate his constructive possession of the bag of methamphetamine. However, when viewed in the light most favorable to the State, *see Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183, the facts taken together amount to "some evidence" from which a reasonable jury could find that there was a sufficient nexus between Defendant and the bag of methamphetamine that his constructive possession of methamphetamine was proved beyond a reasonable doubt, *see C.D.L.*, 2011 UT App 55, ¶ 15, 250 P.3d 69; *see also Workman*, 2005 UT 66, ¶ 35, 122 P.3d 639 ("Taken alone, it is not likely that any one, or even a small group, of these factors would be enough to establish a sufficient nexus between [the defendant] and the clandestine lab. However, we hold that the cumulative effect of these factors is such that a reasonable jury could have concluded that there was a sufficient nexus between [the defendant] and the clandestine lab to satisfy the possession element of the statute.").

¶ 39 Defendant also argues that there was evidence to support his argument that one of the other men in the room could have just as likely possessed the methamphetamine. However, evidence that one of the other men may have constructively possessed the methamphetamine does not mean that Defendant could not also constructively possess the methamphetamine—possession of a controlled substance need not be exclusive and is often joint. *See State v. Winters*, 16 Utah 2d 139, 396 P.2d 872, 874 (Utah 1964); *accord People v. Garcia*, 361 Ill.Dec. 628, 971 N.E.2d 1150, 1154 (Ill.App.Ct.2012) ("Possession of contraband can be, and often is, joint. Evidence of a defendant's possession of drugs therefore does not rule out possession by another defendant.").

¶ 40 Because there was "some evidence" from which a jury could have found beyond a reasonable doubt that Defendant constructively possessed the methamphetamine, a directed verdict would not have been properly granted. Defendant's trial counsel therefore did not perform deficiently in failing to bring a "futile directed verdict motion." *See State v. C.D.L.*, 2011 UT App 55, ¶ 15, 250 P.3d 69 (citation and internal quotation marks omitted).

## CONCLUSION

¶ 41 The trial court did not err in denying Defendant's motion to suppress, because Defendant voluntarily consented to a pat down of his person and Detective Warren's pat down did not exceed the permissible scope of a *Terry* frisk. Defendant did not preserve his argument that Detective Warren did not have probable cause to arrest him for possession of drug paraphernalia. Defendant's tri-

al counsel did not provide ineffective assistance of counsel in failing to formally raise Defendant's argument that the Riverdale City detectives lacked jurisdiction to conduct their investigation in Ogden City. Finally, Defendant's trial counsel was not ineffective for not moving for a directed verdict at the close of the State's case, because such a motion would have been futile. We affirm Defendant's convictions.

DAVIS, Judge (concurring in part and dissenting in part):

¶ 42 I dissent from the lead opinion solely with regard to its analysis under Part I.B., in which Judge Christiansen endorses the trial court's determination that the syringe could be used as a dangerous weapon.[10] *See supra* ¶¶ 20–22. As to all other parts of the lead opinion, I concur.

¶ 43 The trial court's ruling on Defendant's motion to suppress includes the impermissibly broad finding that "[a] syringe can be used as a weapon." Without evidence that a needle was attached to the syringe in Defendant's pocket, I do not see how this syringe, or a syringe in general, could be per se a weapon under any of the analytical frameworks referenced by the trial court or in Part I.B. *Cf. United States v. Rue,* 988 F.2d 94, 96 (10th Cir.1993) (syringe used as a stabbing implement, indicating that it had an attached needle, was considered a deadly weapon); *People v. Autry,* 232 Cal.App.3d 365, 283 Cal.Rptr. 417, 418 (1991) ("[A] contaminated hypodermic needle is one of the more deadly objects one can imagine outside of firearms."); *State v. Nimer,* 2010 UT App 376, ¶ 3, 246 P.3d 1194 (the defendant admitted to having syringes with uncapped needles attached in his pocket); *State v. White,* 856 P.2d 656, 658 (Utah Ct.App.1993) (a police officer removed an uncapped needle from the defendant's pocket). A syringe, by definition, is not necessarily accompanied by an attached needle. *See, e.g., Syringe,* Merriam–Webster Online, http://www.merriam-webster.com/dictionary/syringe (last visited Feb. 3, 2014) (defining "syringe" as "a device

used to inject fluids into or withdraw them from something," "a device that consists of a nozzle of varying length and a compressible rubber bulb and is used for injection or irrigation," and "an instrument (as for the injection of medicine or the withdrawal of bodily fluids) that consists of a hollow barrel fitted with a plunger and a hollow needle"); *Syringe,* Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/syringe (last visited Feb. 3, 2014) (defining "syringe" as "a tube with a nozzle and piston or bulb for sucking in and ejecting liquid in a thin stream, used for cleaning wounds or body cavities, *or* fitted with a hollow needle for injecting or withdrawing fluids" (emphasis added)).

¶ 44 Here, there is no evidence that the syringe Detective Warren felt in Defendant's pocket during his weapons search had a needle attached to it. And Defendant represented to Detective Warren that he " 'absolutely' " did not have any needles or other sharp objects on his person. As stated in Part I.B., "*Terry* itself does not define a weapon, but allows an officer to seize or neutralize 'weapons which might be used to harm the officer or others nearby' or that 'might be used to assault' the officer." *See supra* ¶ 21 (Quoting *Terry v. Ohio,* 392 U.S. 1, 26, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Similarly, the general definition of a dangerous weapon provided in the Utah Code broadly defines a dangerous weapon as "any item capable of causing death or serious bodily injury." Utah Code Ann. § 76–1–601(5)(a) (LexisNexis 2012). However, under either approach, I cannot see how the syringe in this case, without evidence of an attached needle, would be "capable of causing death or serious bodily injury," *see id.*

¶ 45 The same statute also provides that "a facsimile or representation" of a dangerous weapon is a dangerous weapon where "the actor's use or apparent intended use of the item leads the victim to reasonably believe the item is likely to cause death or serious bodily injury" or "the actor represents to the

---

10. Because Judge McHugh concurs only in the result of affirming Defendant's conviction, the lead opinion has majority support and thus precedential value only with respect to the portions of the opinion with which I concur. Part I.B. of the lead opinion, in which I do not concur, represents only the view of the author, and thus has no precedential value.

victim verbally or in any other manner that he is in control of such an item." *Id.* § 76–1–601(5)(b). Here, Defendant denied having any sharp objects on his person and he did not attempt to access the syringe. Indeed, it is not clear that Detective Warren handcuffed Defendant because of any threat he may have perceived from the presence of the syringe where, after Detective Warren commented on feeling the syringe in Defendant's pocket, Defendant turned toward him aggressively with an arm raised, visibly upset and yelling. Furthermore, Detective Warren did not "disarm" Defendant after discovering the syringe, *see Terry*, 392 U.S. at 30, 88 S.Ct. 1868, but did so some time later, implying that Detective Warren did not "reasonably believe" the syringe was a dangerous weapon. *See* Utah Code Ann. § 76–1–601(5)(b). However, by endorsing the trial court's determination on this record that a syringe can be used as a weapon, Part I.B. effectively holds that anyone carrying a syringe for a legitimate purpose, e.g., an insu-lin-dependent diabetic, is guilty of carrying a weapon.

¶ 46 Accordingly, while I do not necessarily disagree that Defendant inadequately briefed this issue, *see supra* ¶ 22 & n. 5, I would overlook any inadequacy to clarify that a syringe, contrary to the trial court's finding, is not per se a weapon and that the evidence in this case does not support a finding that this syringe, even if a needle had been attached, could be used as a weapon. To the extent reversal of that finding would undermine the trial court's ruling on the motion to suppress, I would reverse the trial court's denial of that motion and reverse Defendant's paraphernalia charge.[11]

---

11. It is also worth noting that the syringe ulti-mately tested negative for controlled substances.