**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**Fred HARGRAVE, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 25, 1999.
Filed Jan. 10, 2000.
Reargument Denied March 28, 2000.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before JOYCE and LALLY–GREEN, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Fred Hargrave appeals from his recent non-jury conviction and two-year probationary sentence for burglary and related offenses[1] following his preliminary hearing on the same charges ten years ago. The trial delay was caused by his flight to Virginia for one year, followed by his return to Philadelphia, where he resided for the remaining nine years, hoping his case had been overlooked. The trial judge has stated to us that the testimony of the sole Commonwealth witness "may have been insufficient" to prove Hargrave's guilt beyond a reasonable doubt, but that when coupled with evidence of his flight, it was sufficient. We are asked to review the propriety of this determination.

¶ 2 On December 26, 1988, at approximately 11:00 p.m., Philadelphia Police Officer Frank Flynn and his partner, Officer James Morace, drove past a Woolworth's department store located at 5530 North 5th Street in Philadelphia. They were in an unmarked vehicle, and the store was closed at the time. The officers noticed two men, one of whom was Hargrave, outside the store and near a large pile of trash that was comprised in part of cardboard boxes. A cardboard box was being carried by one of the men, but it also may have been the case that each man had a box. Officer Flynn, the only officer to testify at the trial ten years later, was unable due to the passage of time to remember whether Hargrave was holding a box. The two officers, assuming the men were putting another box or two in the trash pile and finding no reason to stop them, continued on their way. Aside from the aforementioned, Officer Flynn did not testify to anything that would indicate the men were friends or were working together.

¶ 3 Approximately five minutes later, the officers received a radio call that the store had been burglarized. They returned to the Woolworth's and saw the same two men in approximately the same location, near a pay phone by the store; neither was holding a box. The men were approximately five to eight feet from what the officers now saw was a display window that had been broken, and approximately two to three feet from each other. The officers arrested the men and recovered store merchandise from one or more of the boxes on the sidewalk. Also due to the passage of time, Officer Flynn could not recall whether one of the men was using the pay phone.

¶ 4 The manager of the Woolworth's store was unavailable in 1999, but his 1989 preliminary hearing testimony was admitted at trial. He testified that when he closed and left the store at 5:30 p.m. that evening, the store and its windows were intact, but when he arrived that night after the police contacted him, the display window was being repaired by a glass company and the contents of the window, Christmas dishes and musical jewelry boxes, were missing. He later identified the objects police recovered from the one or more boxes outside the store to be items missing from the window.

¶ 5 At the 1999 trial, Hargrave admitted that he was one of the two people arrested that night, that he had failed to appear for his arraignment in February of 1989, and that his next court appearance had been a bench warrant hearing approximately nine and one-half years later. He presented a stipulation indicating his good character for being an honest, peaceful, and law-abiding citizen. He also testified that on the evening in question, he was making a

---

1. These included theft by unlawful taking or disposition, theft by receiving stolen property, criminal conspiracy, and criminal trespass.

phone call to his mother-in-law from the pay phone located outside the store. He stated that when the officers arrived, one of them took the phone handset from him and hung it up. He admitted seeing another man outside of the store, a stranger to him, but he denied having anything to do with that man, the boxes, or the burglary of the store. He also admitted moving to Virginia, where he lived for one year, and then returning to Philadelphia and working until the trial.

¶ 6 In his opinion to this court, the trial judge, the Honorable Joseph I. Papalini, has stated:

> We concluded that the testimony of Officer Flynn, standing alone, may have been insufficient to prove the defendant's guilt[ ] beyond a reasonable doubt.

> However, when a person commits a crime, knows he is a suspect and conceals himself, such conduct is evidence of consciousness of guilt, which may form the basis, along with other proof, [of an inference of guilt]. *Commonwealth v. Rios*, [554 Pa. 419, 434], 721 A.2d 1049, 1056 ([ ]1998); *Commonwealth v. Miller*, 721 A.2d 1121 (Pa.Super.1998).

Given this finding, Hargrave questions only the sufficiency of the evidence to convict him, asking:

> Was not the evidence insufficient to sustain a finding of guilt beyond a reasonable doubt of burglary, conspiracy and related charges[,] inasmuch as the Commonwealth did not prove that appellant was anything more than merely present at the scene[;] and where the trial court conceded in its opinion that the officer's testimony at trial may have been insufficient to convict, was not appellant's failure to appear at his arraignment, introduced as evidence of consciousness of guilt, despite appellant's evidence of good character and his living and working in Philadelphia for nine years, insufficient additional evidence of guilt so as to convict?

We are thus presented with the narrow issue of the legal propriety of Judge Papalini's decision that the circumstantial evidence was sufficient to convict Hargrave under these circumstances.

¶ 7 In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Jarman*, 529 Pa. 92, 94–95, 601 A.2d 1229, 1230 (1992); *Commonwealth v. Swann*, 431 Pa.Super. 125, 635 A.2d 1103 (1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle*, 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)). *See also Commonwealth v. Chmiel*, 536 Pa. 244, 639 A.2d 9 (1994). Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient, for "it is within the province of the fact[-]finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Moore*, 436 Pa.Super. 495, 648 A.2d 331, 333 (1994) (citations omitted). Nonetheless:

> To sustain a conviction, the facts and circumstances which the Commonwealth [must] prove must be such that every essential element of the crime is established beyond a reasonable doubt. Although the Commonwealth does not have to establish guilt to a mathematical certainty, and may in the proper case rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture.

*Commonwealth v. Roscioli,* 454 Pa. 59, 62, 309 A.2d 396, 398 (1973) (citations omitted). This court has further stated that:

> In assessing appellant's sufficiency of the evidence claim, we are mindful that the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, which, of necessity, draws into play the affixing of a line of demarcation between the requisite degree of persuasion ("beyond a reasonable doubt") and impermissible speculation. The former is required while the latter is not tolerated as the basis for a conviction. Thus, in the Commonwealth's efforts to establish guilt predicated upon circumstantial evidence, it must be kept in mind that "[t]he inferred fact must flow, beyond a reasonable doubt, from the proven fact where the inferred fact is relied upon to establish the guilt of the accused or the existence of one of [the] elements of the offense."

*Commonwealth v. Paschall,* 333 Pa.Super. 323, 482 A.2d 589, 591–92 (1984).

¶ 8 The present conviction, even when viewed in the light most favorable to the verdict-winner, cannot be sustained under these standards.

¶ 9 The crime of burglary is established when the Commonwealth has proved beyond a reasonable doubt that the perpetrator entered a secured portion of a building with the intent to commit a crime therein. 18 Pa.C.S. § 3502. The crime of theft is established when it has proved beyond a reasonable doubt that the perpetrator has unlawfully and without permission taken or exercised unlawful control over the property of another with the intent to deprive the other of it. 18 Pa.C.S. § 3921. Here, the Commonwealth proved beyond a reasonable doubt Hargrave's presence at the scene of the crime and his proximity both to a box containing merchandise from the Woolworth's store and to another individual. However, it did not connect Hargrave beyond a reasonable doubt to the box, the merchandise, the other individual, the broken store window or any other entry of the store, the taking of property or, for that matter, any other criminal intent.

¶ 10 In this regard the present evidence is much like that in *In re Hawthorne,* 374 Pa.Super. 104, 542 A.2d 167 (1988), wherein the two appellants had been found on the loading platform of a Pep Boys' store in close proximity to a man who was in unlawful possession of a box of Pep Boys' merchandise. As we stated therein, it is well established that mere presence at the scene of a crime is insufficient to support a conviction, even in the company of a known perpetrator of the crime. *Id.* at 169 (citations omitted). Here, there was not even evidence beyond a reasonable doubt that the other man was involved in the crime. Although the officer testified that one or both of the men was carrying a box when he and his partner first drove by, he was unable to state which of the two it was, or both. He also did not state that these were the same boxes as those from which the Woolworth's merchandise was recovered. We agree with the trial court that, without consideration of the evidence of flight, the evidence is insufficient, because, in essence, it is merely evidence of presence at the scene of the crime.

¶ 11 We must disagree with that court, however, as to the effect of the additional factor of flight. Flight does indicate consciousness of guilt, and a trial court may consider this as evidence, "along with other proof, from which guilt may be inferred ." *Commonwealth v. Bruce,* 717 A.2d 1033, 1037–38 (Pa.Super.1998), *quoted in Commonwealth v. Miller,* 721 A.2d 1121, 1125 (Pa.Super.1998). Nonetheless, this only holds true in cases in which the other evidence of guilt consists of more than mere presence at the scene. Our supreme court has instructed that "mere presence on the scene both immediately prior to and subsequent to the commission of a crime and flight therefrom is not

sufficient evidence to prove involvement in the crime." *Commonwealth v. Goodman,* 465 Pa. 367, 370–71, 350 A.2d 810, 811–12 (1976), *cited in Paschall, supra* at 593 (Cirillo, J., dissenting). "The additional element of flight, which is as consistent with fear as with guilt, does not convert presence into proof of guilt." *Goodman, supra* at 371, 350 A.2d at 811. In *Roscioli, supra,* our supreme court quoted the following pertinent reasoning of the United States Court of Appeals for the District of Columbia:

> The evidentiary value of flight [ ] has depreciated substantially in the face of Supreme Court decisions delineating the dangers inherent in unperceptive reliance upon flight as *indicium* of guilt. We no longer hold tenable the notion that "the wicked flee when no man pursueth[,] but the righteous are as bold as a lion." The proposition that "one who flees shortly after a criminal act is committed[,] or when he is accused of committing it[,] does so because he feels some guilt concerning that act" is not absolute as a legal doctrine "since it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses."

> With cautious application in appreciation of its innate shortcomings, flight may under particular conditions be the basis for an inference of consciousness of guilt. But guilt, as a factual deduction, must be predicated upon a firmer foundation than a combination of unelucidated presence and unelucidated flight. Here there was no evidentiary manifestation that the appellant was prompted by subjective considerations related in any way to the crime.

*Bailey v. United States,* 416 F.2d 1110, 1114–15 (D.C.Cir.1969) (footnotes omitted), *quoted in Roscioli, supra* at 67 n. 6, 309 A.2d at 400 n. 6. As was stated in *Goodman, supra,* "[h]ere, the evidence is as consistent with the inference that appellant innocently happened upon the scene and fled out of fear as it is with the inference that appellant was a participant in the burglary." *Id.* at 371, 350 A.2d at 812.

¶ 12 In addition, Hargrave introduced evidence of his good character for being an honest, peaceful, and law-abiding citizen. In this case, such evidence has great significance. Our supreme court has recently reiterated:

> It is well established that character evidence alone may be sufficient to raise a reasonable doubt and thus justify an acquittal of the charges. *Commonwealth v. Scott,* 496 Pa. 188, 195 n. 1, 436 A.2d 607, 611 n. 1 (1981); *Commonwealth v. Cleary,* 135 Pa. 64, 82–83, 19 A. 1017, 1018 (1890). In *Commonwealth v. Weiss,* this Court stated that:

>> where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere make[-]weight evidence, and may, in and of itself, create a reasonable doubt of guilt, and thus require a verdict of not guilty.

> *Weiss,* 530 Pa. 1, 6, 606 A.2d 439, 442 (1992) (citing *Commonwealth v. Neely,* 522 Pa. 236, 561 A.2d 1 (1989)).

*Commonwealth v. Morgan,* 559 Pa. 248, ——, 739 A.2d 1033, 1037–38, 1999 Pa. LEXIS 2950 (October 1, 1999), *12. The same court in *Cleary, supra,* had explained:

> Evidence of good character is always admissible for the defendant in a criminal case; it is to be weighed and considered in connection with all the other evidence in the cause,—it may of itself, in some instances, create the reasonable doubt which would entitle the accused to an acquittal. The rule itself is not merely merciful. It is both reasonable and just. There may be cases in which, owing to the peculiar circumstances in

which a man is placed, evidence of good character may be all he can offer in answer to a charge of crime. Of what avail is a good character, which a man may have been a lifetime in acquiring, if it is to benefit him nothing in his hour of peril?

*Cleary, supra* at 84, 19 A. at 1018.

¶ 13 Accordingly, in light of the character evidence, together with the Commonwealth's failure to establish Hargrave's guilt beyond a reasonable doubt of any of the offenses with which he was charged, the convictions may not stand.

¶ 14 Judgment of sentence vacated. Appellant is discharged.