2014 UT App 55

**STATE of Utah, Plaintiff and Appellee,**

v.

**Luis Miguel CRISTOBAL, Defendant and Appellant.**

No. 20120309–CA.

Court of Appeals of Utah.

March 13, 2014.

Margaret P. Lindsay and Douglas J. Thompson, for Appellant.

Sean D. Reyes and Andrew F. Peterson, for Appellee.

Judge MICHELE M. CHRISTIANSEN authored this Memorandum Decision, in which Judge J. FREDERIC VOROS JR. and Senior Judge RUSSELL W. BENCH concurred.[1]

Memorandum Decision

CHRISTIANSEN, Judge:

¶ 1 Defendant Luis Miguel Cristobal appeals his first degree felony aggravated robbery conviction. Defendant argues that the trial court erred by denying his motion for a directed verdict. We affirm.

¶ 2 Defendant's conviction stems from his role in the robbery of a Springville convenience store in November 2010.[2] During trial, Defendant moved for a directed verdict at the close of the State's case. Defendant argued that the State's evidence did not create "a sufficient nexus under the law" connecting Defendant to the commission of the robbery. See Utah R.Crim. P. 17(p) ("At the conclusion of the evidence by the prosecution, or at the conclusion of all the evidence, the court may issue an order dismissing any information or indictment, or any count thereof, upon the ground that the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense."). After briefly reviewing the evidence, the trial court denied Defendant's motion. The jury subsequently convicted Defendant, and the court sentenced him to an indeterminate prison term of five years to life. Defendant timely appeals.

¶ 3 In reviewing a trial court's denial of a motion for a directed verdict based on a claim of insufficiency of the evidence, we "will uphold the trial court's decision if, upon

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Montoya,* 2004 UT 5, ¶ 2, 84 P.3d 1183 (citation and internal quotation marks omitted).

reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (citation and internal quotation marks omitted); *see also State v. Emmett*, 839 P.2d 781, 784 (Utah 1992) ("When a motion for a directed verdict is made at the close of the State's case, the trial court should dismiss the charge if the State did not establish a prima facie case against the defendant by producing believable evidence of all the elements of the crime charged." (citation and internal quotation marks omitted)). Indeed, "[i]f there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged or any of its degrees, it is the trial court's duty to submit the case to the jury." *Montoya*, 2004 UT 5, ¶ 33, 84 P.3d 1183 (alteration in original) (citation and internal quotation marks omitted).

▮ ¶ 4 We note that when a "prosecution is built upon circumstantial evidence, the government depends upon inferences to carry its burden ... [and] probative inferences must be more than speculation and conjecture." *United States v. Jones*, 49 F.3d 628, 632 (10th Cir.1995) (citation and internal quotation marks omitted); *accord State v. Cristobal*, 2010 UT App 228, ¶ 7, 238 P.3d 1096. Thus, where there is an absence of direct evidence supporting each element of the crime charged, a jury's guilty verdict must be based upon reasonable inferences. *Cristobal*, 2010 UT App 228, ¶ 10, 238 P.3d 1096. A reasonable inference is a conclusion that can be drawn from the evidence and is based on logic and reasonable human experience. *State v. Workman*, 852 P.2d 981, 985 (Utah

1993); *see also Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096 (" 'The line between a reasonable inference that may permissibly be drawn by a jury from basic facts in evidence and an impermissible speculation ... is drawn by the laws of logic. If there is an experience of logical probability that an ultimate fact will follow a stated narrative or historical fact, then the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts.' " (emphasis omitted) (quoting *Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir.1987))). Additionally, "a reasonable inference arises when the facts can reasonably be interpreted to support a conclusion that one possibility is more probable than another." *Cristobal*, 2010 UT App 228, ¶ 16, 238 P.3d 1096.

▮ ¶ 5 Here, we determine that the State submitted believable and sufficient evidence, even if circumstantial, on each element of the crime of aggravated robbery for the jury to conclude beyond a reasonable doubt that Defendant participated in the robbery. Relevant to this case, Utah law provides that a "person commits aggravated robbery if in the course of committing robbery, he ... uses or threatens to use a dangerous weapon." Utah Code Ann. § 76–6–302(1)(a) (LexisNexis 2012).[3] The store clerk who was working the night of the robbery testified that two men, both wearing masks, entered the store, threatened the clerk with a knife, and instructed the clerk to open the cash register and give them the money. The clerk's testimony was confirmed by the detective who investigated the crime scene and who viewed surveillance video of the robbery. Based on this evidence, it is undisputed that a robbery

---

3. Under Utah law, a person commits robbery if

    (a) the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear, and with a purpose or intent to deprive the person permanently or temporarily of the personal property; or

    (b) the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft or wrongful appropriation.

Utah Code Ann. § 76–6–301(1) (LexisNexis 2012). Also, Utah law defines the term "dangerous weapon" as

    (a) any item capable of causing death or serious bodily injury; or

    (b) a facsimile or representation of the item, if:

      (i) the actor's use or apparent intended use of the item leads the victim to reasonably believe the item is likely to cause death or serious bodily injury; or

      (ii) the actor represents to the victim verbally or in any other manner that he is in control of such an item.

*Id.* § 76–1–601(5).

occurred and that a dangerous weapon was used in its commission. Thus, the principal issue at trial was *who* committed the robbery.

¶ 6 According to the detective, the surveillance video showed one of the robbers look at his hand and then bring it to his mouth shortly after he threatened the clerk with the knife. The detective testified that it appeared the robber was trying to remove blood from his finger. From this, the jury could have reasonably inferred that the robber cut himself while handling the knife. The apparent attempt by the robber to stop the bleeding from his finger led the Detective to search for blood evidence in the store. Both the detective and another officer testified that they found two blood spatters inside the store and one spatter outside the store. The evidence revealed that the location of the blood spatters was consistent with where the robbers stood during the robbery and the direction in which the robbers fled after exiting the store. From this, the jury could have reasonably inferred that the robber's blood dripped on the store floor during the robbery and then again outside the store as the robbers fled the scene. This inference is further strengthened by the clerk's testimony that he had mopped the store floor with a machine about a half hour before the robbery, and by the detective's testimony that at least one of the spatters "had a redder tint to it" and was not "as dark as the other two," which left the detective with the "impression it was fresher, but not completely dry." Finally, the State presented DNA evidence that conclusively linked the three blood spatter samples found in the store and outside to Defendant.

¶ 7 All of the inferences that the jury would have been required to draw in this case to reach a conviction were based on logic and reasonable human experience. *See Workman,* 852 P.2d at 985. Because these inferences "support a conclusion that one possibility is more probable than another,"— i.e., that Defendant as opposed to somebody else committed the aggravated robbery—the inferences are reasonable and not speculative. *See Cristobal,* 2010 UT App 228, ¶ 16, 238 P.3d 1096. This is not a case in which the evidence and inferences derived therefrom support two equally-plausible conclu-

sions. *See id.* Thus, we agree with the State's assertion that it "presented competent evidence covering every step in the logical chain." We also agree with Defendant's notable concession that "the direct evidence (blood matching [Defendant's] DNA at the scene, the mopping of the floors, the robber putting his hand to his mouth) can lead to the inference that the blood came from the robber and the robber was [Defendant]." Therefore, "upon reviewing the evidence and all inferences that can be reasonably drawn from it," we conclude that some evidence exists from which a reasonable jury could find that the elements of aggravated robbery—and Defendant's participation in that robbery—"had been proven beyond a reasonable doubt." *See Montoya,* 2004 UT 5, ¶ 29, 84 P.3d 1183 (citation and internal quotation marks omitted). Accordingly, we affirm the trial court's denial of Defendant's motion for a directed verdict.