**2015 UT App 282**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DERONE QUINTON HARRIS,
Appellant.

Memorandum Decision
No. 20140358-CA
Filed November 27, 2015

Second District Court, Ogden Department
The Honorable Michael D. DiReda
No. 131901796

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes and Deborah L. Bulkeley, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES JAMES Z. DAVIS and J. FREDERIC VOROS JR.
concurred.[1]

ROTH, Judge:

¶1     Derone Quinton Harris appeals his convictions for
burglary, theft, and criminal mischief, each third degree felonies,
and possession of burglary tools, a class B misdemeanor.[2] We
affirm.

---

1. Judge James Z. Davis participated in this case as a member of
the Utah Court of Appeals. He retired from the court on
November 16, 2015, before this decision issued.

2. Harris was also convicted of failure to stop at the command of
a law enforcement officer, a class A misdemeanor, and

(continued…)

¶2      "We view the facts in the light most favorable to the jury verdict and recite them accordingly." *State v. Montoya*, 2004 UT 5, ¶ 2, 84 P.3d 1183 (citation and internal quotation marks omitted). At 4:15am on September 8, 2013, a door sensor alarm and two interior motion detector alarms were triggered at a ski specialty store (the Store) located in Ogden, Utah. The Store is a U-shaped building set back from the public road by a parking lot. The three sides of the building form a courtyard that contains three large planter boxes, each one set further from the public entrances than the last. The Store has two public entrances located at the base of the U; both are glass doors with floor-to-ceiling metal gates that are pulled across them at night. There are also four non-public entrances: three at the back of the building from the basement, and one at the front of the building. All the Store's entrances are locked at night.

¶3      When the alarms triggered, two Ogden City police officers, Officer Nielsen and Officer Grogan, were dispatched to investigate. The officers arrived at the Store in separate patrol vehicles within seven minutes of the initial alarm. Once at the scene, they began to investigate on foot, with Officer Nielsen moving to check the courtyard while Officer Grogan went to the rear of the building.

¶4      At first, neither officer saw anyone at the scene. When Officer Nielsen approached the courtyard, he could see that one of the glass doors had been broken, with most of the shards having fallen out into the courtyard. He also noticed a large tree branch lying on the ground next to the door. But as Officer Nielsen approached the broken door, a man later identified as Harris "jump[ed] out from behind" the planter box closest to the Store's entrances and ran away from the Store. Officer Nielsen

---

(…continued)
interference with an arresting officer, a class B misdemeanor. He does not challenge either conviction on appeal.

and Officer Grogan soon cornered Harris near a fourplex not far from the Store. Harris resisted arrest, and the officers physically subdued him. When Officer Nielsen searched Harris, he discovered a shard of glass in Harris's pants pocket that matched the thickness and hue of the glass from the Store's broken door.

¶5    The officers then returned to the Store with Harris. Further investigation revealed that all three of the front entrance door locks had been tampered with and damaged. Pry marks were also discovered on the exterior of two of the basement doors.[3] In the courtyard, a black backpack, a white shopping bag, and a black duffle bag were discovered on the ground "[j]ust around the corner" from the planter box located closest to the broken door where Officer Nielsen had first seen Harris. The white shopping bag had the Store's labels on it and contained two sets of headphones and two Bluetooth headsets, all new and of the kind sold at the Store.[4] The black backpack was also Store merchandise, and was filled with women's socks and a number of pairs of sunglasses from the Store.[5] There was a claw hammer on top of the black duffle bag, and inside the duffle bag were a "long straight screwdriver, three small screwdrivers and three pairs of pliers." A crime scene investigator processed the bags and their contents but was only successful in recovering fingerprints from two pairs of sunglasses; those prints did not match Harris's. Inside the store, a closed cash box had been pried at and "mangled." A suitcase from the Store's inventory

---

3. The monetary damage to the doors and locks amounted to nearly $2,000.

4. The crime scene investigator testified that the headsets together retailed for $350 and the headphones were $30 each.

5. The Store's owner testified that it appeared as though an entire sunglasses rack had been dumped into the backpack. The items were valued at around $2,000.

was found lying open on the floor. An entire rack of jackets had been cleared; a few of them were found at the bottom of the basement stairwell, and the rest were in a pile in the Store's storage room.

¶6    Harris was charged with burglary, theft, criminal mischief, interference with an arresting officer, failing to stop at the command of a law enforcement officer, and possession of burglary tools. At trial, defense counsel moved for a directed verdict at the conclusion of the State's case. The trial court denied the motion, stating that "reasonable minds could disagree" regarding the sufficiency of the State's evidence. The jury convicted Harris on all charges.

¶7    On appeal, Harris argues that the State presented insufficient evidence to convict him of burglary, theft, criminal mischief, and possession of burglary tools. Specifically, Harris argues there was insufficient evidence to establish that he entered the Store; that he possessed any of the items found outside the Store, whether burglary tools or Store inventory; or that he damaged the Store or its contents. He dismisses the significance of the glass shard found in his pocket and contends that the only evidence of any substance that ties him to the crimes was his presence at the scene and his flight—but then argues that neither presence at the scene of a crime nor flight are sufficient under Utah law to support the convictions. Harris asserts that the trial court therefore should have "forthwith order[ed] him discharged." *See* Utah Code Ann. § 77-17-3 (LexisNexis 2012). The State argues that the evidence was sufficient for the case to go to the jury.[6] We conclude that the

_____

6. The State also argues that Harris has not preserved the insufficiency arguments he makes on appeal. Considering the proceedings related to Harris's directed verdict motion as a whole, including the prosecutor's response to the motion, we conclude the issues were sufficiently preserved.

State presented sufficient evidence to defeat Harris's directed verdict motion, and affirm.

ANALYSIS

¶8      A party seeking reversal of a directed verdict denial has a difficult burden of persuasion on appeal because we "review the evidence and all reasonable inferences that may fairly be drawn therefrom in the light most favorable to the jury verdict," *State v. Colwell*, 2000 UT 8, ¶ 11, 994 P.2d 177, and we will reverse the denial only if we determine that the evidence "is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element," *State v. Workman*, 852 P.2d 981, 984 (Utah 1993) (citations omitted). Put another way, the trial court's decision will be affirmed "if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (citation and internal quotation marks omitted).

¶9      In addition, while the evidence against Harris is largely circumstantial, it "is a well-settled rule that circumstantial evidence alone may be sufficient to establish the guilt of the accused," *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11 (citation and internal quotation marks omitted), and "[d]irect evidence is not required" to establish guilt, *State v. Nielsen*, 2014 UT 10, ¶ 47, 326 P.3d 645. Convictions based solely on circumstantial evidence are reviewed to determine "'(1) whether there is any evidence that supports each and every element of the crime charged, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove each legal element of the offense beyond a reasonable doubt.'" *State v. Lyman*, 966 P.2d 278, 281 (Utah Ct. App. 1998) (quoting *State v. Brown*, 948 P.2d 337, 344 (Utah 1997)). "A

reasonable inference is a conclusion that can be drawn from the evidence and is based on logic and reasonable human experience." *State v. Cristobal*, 2014 UT App 55, ¶ 4, 322 P.3d 1170. "Additionally, a reasonable inference arises when the facts can reasonably be interpreted to support a conclusion that one possibility is more probable than another." *Id.* (citation and internal quotation marks omitted). On the other hand, circumstantial evidence is insufficient if the inferences derived from it give rise to only "remote or speculative possibilities of guilt." *See Carrera*, 2015 UT 73, ¶ 11 (citation and internal quotation marks omitted). But where the fabric of circumstantial evidence "reasonably sustain[s]" inferences of guilt, *Nielsen*, 2014 UT 10, ¶ 47, and "'cover[s] the gap between the presumption of innocence and the proof of guilt,'" *Lyman*, 966 P.2d at 281 (quoting *State v. Petree*, 659 P.2d 443, 444–45 (Utah 1983)), the evidence will be sufficient. We first consider the sufficiency of the evidence in the case and then turn to the cases Harris uses to support his arguments.

A. The Evidence

¶10 Harris contends that the case against him is "not particularly strong" because there are only three pieces of evidence relevant to his charges of burglary,[7] theft,[8] possession

---

7. "An actor is guilty of burglary who enters or remains unlawfully in a building or any portion of a building with intent to commit: (a) a felony [or] (b) theft . . . ." Utah Code Ann. § 76-6-202 (LexisNexis 2012).

8. "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." *Id*. § 76-6-404; *see also id*. § 76-6-412(1)(b)(i) (stating that theft is a third degree felony if, "the value of the property or services is or exceeds $1,500 but is less than $5,000").

of criminal tools,[9] and criminal mischief:[10] (1) his proximity to the "stolen property on the outside of the store;" (2) his flight from the police; and (3) the "small piece of glass" found in his pocket. In particular, he contests the sufficiency of evidence as to the specific elements of entry, constructive possession[11] of the tools, constructive possession of the stolen items, and destruction of the Store's property, pointing out that the State

---

9. "Any person who manufactures or possesses any instrument, tool, device, article, or other thing adapted, designed, or commonly used in advancing or facilitating the commission of any offense under circumstances manifesting an intent to use or knowledge that some person intends to use the same in the commission of a burglary or theft is guilty of a class B misdemeanor." *Id*. § 76-6-205.

10. "A person commits criminal mischief if the person . . . intentionally damages, defaces, or destroys the property of another," *id*. § 76-6-106(2)(c). Additionally, to qualify as third degree felony criminal mischief, the "actor's conduct [must] cause[] or [be] intended to cause pecuniary loss equal to or in excess of $1,500 but is less than $5,000 in value." *Id.* § 76-6-106(3)(b)(ii).

11. Constructive possession is a highly fact-intensive inquiry that is wholly dependent on the "facts and circumstances of each case" with a view toward determining whether there is a legally sufficient connection between the accused and the contraband. *See State v. Burdick*, 2014 UT App 34, ¶ 36, 320 P.3d 55 (citations and internal quotation marks omitted). Factors particularly pertinent in this case include "incriminating behavior of the accused," "presence of [items] in a specific area over which the accused has control," *State v. Fox*, 709 P.2d 316, 319–20 (Utah 1985) (citations omitted), the accused's presence at the time contraband items are found, and the accused's "proximity to the [items]," *Burdick*, 2014 UT App 34, ¶ 36.

presented no direct evidence (such as fingerprints or video surveillance) that affirmatively put him inside the Store or in contact with the Store's merchandise found outside it.

¶11    But the legal standard applicable to a sufficiency challenge does not focus on the strength of the prosecution's evidence. Rather, our review is limited to a determination of whether there is "some evidence" that would allow a reasonable jury to find that the elements of the crimes had been "proven beyond a reasonable doubt." *Montoya*, 2004 UT 5, ¶ 29 (citation and internal quotation marks omitted). Here, in addition to the three pieces of evidence Harris identifies, the prosecution presented evidence that: (1) Harris was the only person observed in the vicinity of the Store in the early morning hours just minutes after three of the Store's alarms, including two interior motion detectors, were triggered;[12] (2) Harris was discovered, not on the public street, but deep in the courtyard, mere feet from the broken glass and door, crouched over the stolen items and burglary tools, and behind a planter box that concealed him from view; (3) the Store bore proof of damage in the form of tampered entrance locks and pry marks surrounding entry doors, consistent with the burglary tools; (4) when the officers approached the Store, rather than engage with them or attempt to explain his presence, Harris fled the scene and subsequently resisted arrest; and (5) Harris's pocket contained a piece of glass that matched the shattered glass from the Store's entrance.

¶12    We conclude that this evidence fulfills the requirement of "some evidence" from which a jury might reasonably infer, based on "logic and reasonable human experience," that Harris

---

12. Officer Nielsen testified as to the significance of the multiple alarms. He stated that in "[t]his one we had two motions and a door so you had three alarms set off" and concluded that that "usually" meant the alarms were not "false." The Store's owner agreed.

committed the crimes with which he was charged. *See Cristobal*, 2014 UT App 55, ¶¶ 3, 4, 7. "Logic" and "human experience" suggest that a person found alone on the Store's private property, in the dark of the early morning, just minutes after alarms were triggered, at some remove from the common thoroughfare, crouched over stolen items and burglary tools, with a piece of glass from the Store's shattered entryway in his pocket, was not at the scene of the crime through mere happenstance. Rather, considered together, we think this evidence is sufficient to support a reasonable inference that it was probable that Harris's presence at the Store was due to his direct involvement in the criminal activity that had just occurred. In this case, that direct involvement necessarily included entry into the Store, constructive possession of the tools and stolen items, and criminal mischief.

¶13 In particular, this evidence reasonably and logically suggests that Harris was in close proximity at the very moment the glass door was broken. There was testimony at trial that the majority of the shattered glass had fallen outward toward the courtyard. Harris was apprehended with a piece of glass that matched the broken door in his pocket. A jury could reasonably conclude that the presence of the glass shard on Harris's person was consistent with both the violent manner in which the glass was broken and the way the glass fell outward into the courtyard. It would thus be reasonable to infer that the piece of glass was in Harris's pocket because he was standing next to the glass door when it was broken, and, in conjunction with other evidence, that he broke the glass himself.

¶14 Harris's attempts to dismiss the glass shard's significance by claiming it is just as likely that the "glass touched his hands" while he knelt to look at the items behind the planter and "later was transferred to his pocket" are unpersuasive. It seems unlikely that in the course of kneeling down at the scene of the break-in, a piece of glass would have found its way from the ground into his pocket. Certainly, the jury could have reasonably

concluded that the more plausible explanation was that Harris was in close proximity to the door when the glass was broken, not that he "inadvertently transferred" a piece of the glass to his pocket while innocently kneeling down to look at items behind the planter. *See Cristobal*, 2014 UT App 55, ¶ 7 ("Because these inferences support a conclusion that one possibility is more probable than another . . . the inferences are reasonable and not speculative." (citation and internal quotation marks omitted)).

¶15 Consequently, because the evidence supports reasonable inferences that place Harris in close proximity the moment the glass door was shattered, the contested elements of the charges fall into place. In order to enter the well-secured building, entry had to be forced, and Harris was discovered crouched alone over a bag of tools that would have afforded him the means to create a point of entry. Other than the tree branch, no other evidence was recovered from the scene to suggest another means to force an entry. And the exterior damage—the broken door, the damaged exterior door locks, and the damage to the paint and wall surfaces next to the exterior basement doors—was consistent with the kinds of tools in the bag.[13] It would be reasonable to infer from this damage that, because he was present when the glass door shattered, Harris exercised "power" and "control" over the tools to engage in criminal mischief by creating the entry point.

¶16 It would also be reasonable to infer that Harris used the tools to enter the Store and thereafter exercise control over the merchandise by removing it from the premises. Harris was discovered hiding behind a planter box with the stolen merchandise within minutes after interior motion detectors had

---

13. These inferences were strengthened by Officer Nielsen's testimony that the pry marks "in relation to the tools" were "[v]ery similar to possibly the hammer or the screwdriver" and that the pry marks were "fresh."

been triggered. Because the stolen merchandise had been inside the Store before the burglary, the only way the bags of stolen merchandise could have made it out to the courtyard was through an unauthorized entry, and the very presence of the bags outside of the Store supports this inference.[14] In addition, the presence of the merchandise outside the Store right next to the bag of tools reasonably supports inferences that the procurement of stolen merchandise was the endgame and that, had the police arrived later, Harris would have absconded with both the tools and the merchandise.

¶17 Thus, all of the evidence taken together would permit a jury to infer that Harris committed the crimes with which he was charged. Accordingly, the evidence of burglary, theft, criminal mischief, and possession of burglary tools was sufficient to survive Harris's motion to dismiss at the close of the State's evidence.

B. Cases Cited by Harris

¶18 The cases Harris relies on do not persuade us to reach a different result. Harris cites a number of cases standing for the general proposition that "mere presence"[15] at a crime scene is

---

14. The Store's owner testified that, when she locked up the Store on the night of the burglary, both the backpack and the shopping bag used to carry the stolen merchandise had also been inside the Store.

15. Harris cites a number of Fourth Amendment cases to support his argument that mere proximity should not be enough to support his burglary conviction. *See, e.g.*, *State v. Swanigan*, 699 P.2d 718, 719 (Utah 1985) (per curiam) (holding that proximity to an area where recent burglaries had been reported was insufficient to establish "reasonable suspicion" to justify an investigatory stop); *State v. Trujillo*, 739 P.2d 85, 86, 89 (Utah Ct.

(continued…)

insufficient to support a criminal conviction.[16] Harris also cites a number of cases that have held that a defendant's presence near

---

(…continued)
App. 1987) (concluding that walking along the street at a late hour in a "high crime area" was insufficient to establish probable cause that would have justified a stop and frisk of the defendant). We do not disagree with the holdings of these cases, but rather conclude, as we have explained, that this is not a "mere presence" case.

16. For example, Harris cites *Rawls v. State*, 513 So. 2d 942 (Miss. 1987). In *Rawls*, the only evidence supporting conviction was that, around midnight, "[Rawls] walked around the side of [a house], shortly after two other men, who had carried several unidentified objects." *Id.* at 944. While all three men were on the sidewalk after coming around the house, only the two men holding items ran and hid behind another car after being suddenly illuminated by the eyewitness's headlights. Rawls did not run and hide, and thereafter, the two men drove away in a car together, leaving Rawls alone. *Id.* at 943. It was later discovered that "two television sets and a stereo were missing" from the house. *Id*. The court reversed Rawls's burglary conviction. *Id.* at 944. *See also Edwards v. State*, 867 S.W.2d 90, 94 (Tex. Ct. App. 1993) (evidence insufficient to support a burglary conviction for one of the burglarized houses at issue where the witness testified that she saw the defendant approach the front door of the house in the company of another person but could not verify that he entered the house because her view was blocked, the defendant disappeared from view "for less than a minute," and he did not carry anything back to the waiting car with him); *cf. Azcuy v. State*, 705 So. 2d 129, 129 (Fla. Dist. Ct. App. 1998) (a defendant's "mere proximity to an instrument," in this instance a stick, that "may have been used[] by anyone" to burglarize a flower cart was insufficient to support his burglary conviction).

the crime scene, even in conjunction with flight or possession of stolen items or tools, is not sufficient to support an inference of entry with intent required for a burglary conviction.[17] In contrast

---

17. Harris cites *Commonwealth v. Hargrave*, 2000 PA Super 5, 745 A.2d 20, as being particularly persuasive here. But in *Hargrave*, the only evidence the prosecution presented was proximity to both the crime scene and the stolen items along with the defendant's subsequent flight, and the surrounding circumstances were decidedly less substantial than in Harris's case. In *Hargrave*, the defendant was standing late at night with another man outside a Woolworth store next to boxes of stolen merchandise and a broken display window at the time police were notified that the store had been burglarized. *Id.* ¶¶ 2–4. In addition, following a preliminary hearing on the charges, the defendant fled the state for a year, and the case was not tried for another nine years. *Id.* ¶ 1. Even though the officer could not recall whether he had seen the defendant carrying a box from Woolworth's, the trial court found that the officer's testimony in conjunction with the defendant's flight provided sufficient evidence to convict the defendant of burglary. *Id.* ¶ 6. The reviewing court determined that while the Commonwealth had "proved beyond a reasonable doubt [that the defendant was present] at the scene of the crime" and was proximate "both to a box containing merchandise from the Woolworth's store and to [the other implicated] individual," it had not connected the defendant "beyond a reasonable doubt to the box, the merchandise, the other individual, the broken store window or any other entry of the store." *Id.* ¶ 9. Further, the court concluded that while "[f]light does indicate consciousness of guilt," inferences of guilt based on flight are only proper where "the other evidence of guilt consists of more than mere presence at the scene." *Id.* ¶ 11. The reviewing court thus held the evidence to be insufficient for the defendant's conviction of burglary and other related offenses. *Id.* ¶ 13.

to the cases he cites, however, the circumstances surrounding Harris's presence at the Store suggest that he was more than merely proximate to the scene of the crime and that his constructive possession of the stolen items and tools was not isolated from the other circumstances connecting him to the burglary but tied to them.[18] The piece of glass tied Harris to the Store, the tools, and the stolen items in a way that the defendants in the cases he cites were not: It supports a reasonable inference

---

18. Harris cites several other cases to support his argument that possession of the stolen items and tools, even in addition to "mere presence," cannot prove that he entered the Store. *See, e.g.*, *State v. Arrington*, 514 So. 2d 675 (La. Ct. App. 1987) (a defendant's mere possession of three rings stolen from a house could not support an inference of entry where the defendant could not be placed any closer than a block from the house on the day of the burglary and where other evidence supported the defendant's innocence); *People v. Smith*, 333 N.Y.S.2d 135 (N.Y. App. Div. 1972) (evidence was insufficient to support an inference of entry where the defendant was apprehended on the fire escape stairway of an apartment building while purportedly in possession of two items from a burglarized apartment, but where the evidence also established that the defendant had been visiting a friend in an apartment two stories above the crime scene and no evidence placed him on the same story where the burglary occurred); *see also Corbin v. State*, 585 So. 2d 713 (Miss. 1991) (a defendant's fingerprints on stolen merchandise that merely showed that "at some point in time" the defendant had touched some of the stolen merchandise was insufficient evidence to support a burglary conviction where the only person who was seen holding the stolen merchandise dropped it and fled upon being approached by a police officer a couple of blocks from the burglarized grocery store, and where that person was never identified). To the extent these cases do apply to this case, we are not persuaded by them.

that he was present at the Store at the point in time when the glass door was shattered and entry was accomplished. And although flight alone is not sufficient to support an inference of entry, it is not improper to infer guilt from flight in a case, like Harris's, where there are other circumstances that support such an inference.[19] *See State v. Holgate*, 2000 UT 74, ¶ 23, 10 P.3d 346 ("While a defendant's flight from a crime scene, standing alone, does not support an inference of intentional conduct, the circumstances of a defendant's flight, in addition to other circumstantial evidence, may be adequate to support such an inference." (citation and internal quotation marks omitted)); *see also id.* ¶ 23 n.6 ("'Flight *by itself* is not sufficient to establish the guilt of the defendant, but is merely a circumstance to be considered with other factors as tending to show . . . guilt itself.'" (emphasis added) (quoting 1 Wharton's Criminal Evidence

---

19. Harris cites *Commonwealth v. Goodman*, 350 A.2d 810 (Pa. 1976), for the proposition that presence at a crime scene combined with flight is insufficient to support a burglary conviction. In that case, the court held that the evidence was not sufficient to support an inference that the defendant was a participant in the burglary because the evidence showed only that the defendant emerged empty-handed from a doorway leading to the rear of a grocery store shortly after another man had emerged carrying a box of stolen meat, and that the defendant fled when the other man fled. *Id.* at 812. The court considered it significant that the doorway the defendant and the other man had emerged from also led to an apartment stairway, and that because of this fact, the evidence was "as consistent with the inference that [the defendant] innocently happened upon the scene and fled out of fear as it [was] with the inference that [the defendant] was a participant in the burglary." *Id.* Thus, the defendant's guilt could not be proven beyond a reasonable doubt. *Id.* As discussed above, the circumstances supporting an inference of entry in Harris's case are more substantial.

§ 214, at 450 (Charles E. Torcia ed., 13th ed. 1972))). Indeed, even if the combination of flight, proximity, and possession of stolen items and tools, was not sufficient to justify a burglary conviction, these pieces of evidence are not entirely irrelevant. Rather, they can properly be weighed together with other circumstances indicative of guilt to provide sufficient weight in the aggregate to support a guilty verdict. And that is the case here.

¶19    Harris's case can also be distinguished from cases he uses to support his constructive possession arguments.[20] Harris's "intent to exercise control" over the tools flowed directly from their presence at a scene where, among other damage, a glass door was forcibly shattered and the circumstances supported a reasonable inference that Harris was implicated. Harris had a glass shard resembling the door glass in his pocket and the stolen items and the tools were in his plain sight. In particular, the hammer was lying "on top" of the bags Harris was kneeling over. And Harris was found alone and adjacent to the items at a time of day when people were unlikely to have been outside, let

---

20. *See, e.g.*, *In re M.B.*, 2008 UT App 433, ¶¶ 20, 26, 198 P.3d 1007 (concluding that the juvenile court improperly inferred that the defendant "constructively possessed the burglary tools" found between a seat and the console where the only evidence was that the defendant "was in a car that contained the gloves and screwdrivers, and that a screwdriver and some gloves were in his vicinity but not in plain sight"); *State v. Salas*, 820 P.2d 1386, 1389 (Utah Ct. App. 1991) (holding that the evidence was insufficient to connect the defendant to the cocaine found in his car where there were two other passengers in the car, where the cocaine was "found in an area that was not easily accessible to the defendant," and where the other passenger closest to where the cocaine had been found was "seen moving around in a furtive manner just before the traffic stop").

alone crouched behind a planter box near the Store's entrance. The evidence that Harris possessed the tools is therefore significantly more substantial than the evidence in the cases he cites.

CONCLUSION

¶20 Reviewing the evidence presented and the inferences reasonably drawn therefrom, we conclude that the State presented sufficient evidence to survive Harris's motion to dismiss. Harris has not met his difficult burden of showing that there was no evidence sufficient to submit the case to the jury, nor has he persuaded us that the circumstantial nature of the evidence renders inferences regarding entry and constructive possession merely speculative. We reiterate that our role on appeal is not to re-weigh the evidence but is instead limited to determining whether the State presented "some evidence" to support the elements of the contested convictions from which a jury could have arrived at guilty verdicts on the contested charges. *See Mahmood v. Ross*, 1999 UT 104, ¶ 18, 990 P.2d 933 ("[T]he court is not free to weigh the evidence and thus invade the province of the jury whose prerogative it is to judge the facts." (citation and internal quotation marks omitted)). While Harris contends that "[h]e was literally in the wrong place at the wrong time," we cannot say that there is no evidence to support reasonable inferences regarding the elements of the charges that Harris challenges. Thus, the trial court did not err by denying Harris's directed verdict motion at the close of the State's evidence. We affirm.

_____