J-S06033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY CREIGHTON | : | |
| | : | |
| Appellant | : | No. 2782 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 11, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002880-2019

BEFORE: DUBOW, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED JULY 19, 2024**

Timothy Creighton ("Creighton") appeals from the judgment of sentence imposed after a jury convicted him of first-degree murder and related offenses.[1] We affirm.

The trial court concisely summarized the factual background to this appeal as follows:

> [V]ideo footage captured [Creighton's] brother, James[ ("James")], driving to the scene of the shooting in a white van with [Creighton,] [Creighton] exiting the passenger side of the van, shooting [James] Timbers [("Timbers")], then walking back toward [the direction of where the van had been]. Police stopped the white van after a witness identified it as ["]the shooting vehicle.["] [Creighton] and James . . . immediately exited the van and fled the scene. James . . . tossed a firearm into a garbage can[2] . . . while fleeing and was eventually apprehended.

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, 907.

[2] Ballistic testing confirmed that the pistol James discarded fired at least two of the bullets during the shooting. *See* N.T., 8/17/22, at 221, 231.

[Creighton] fled to a house . . . and ran to a bathroom on the second floor, where he took off his clothes and got into a bathtub with running water. Police subsequently arrived at the house, pulled [Creighton] out of the bathtub, and arrested him. [Police recovered from the home Creighton's clothes, which included a dark hoodie with white trim on the cuffs and the along the waist, and white lettering on the back of the hood.].

Trial Court Opinion, 6/8/23, at 1-2; *see also* Commonwealth's Exhibit 37 (showing Creighton's hoodie recovered from the home).

At a jury trial,[3] the Commonwealth presented testimony from the police officers who responded to the report of the shooting, pursued the white van, and apprehended Creighton and James. *See* N.T., 8/17/22, at 21-68; 146-172. Additionally, the resident of the home to which Creighton fled testified she did not know Creighton prior to his entering her home and using her bathroom. *See id*. at 7-19.

Detective Thorsten Lucke ("Detective Lucke") also testified at trial using a compilation video he prepared from security camera footage near the scene of the shooting, as well as a police body camera footage that recorded the stop of the van and Creighton's flight from the passenger side of the van. *See*

_____

[3] Creighton was tried jointly with James, but James entered a negotiated guilty plea shortly before the jury's verdict.

We note that the certified record transmitted to this Court did not contain any of the video exhibits referred to at trial or a complete set of the transcripts at trial. *See Commonwealth v. Holston*, 211 A.3d 1264, 1275 (Pa. Super. 2019) (stating that the official record of the events that occurred in the trial court is the fundamental tool for appellate review). However, we have obtained some of the video exhibits and all of the trial transcripts upon an informal request. As discussed below, Creighton's failure to provide this Court with a complete record to review his issue will result in waiver. *See id*. at 1276-77.

N.T., 8/18/22, at 92-117, 132-34; Commonwealth's Exhibit 45 at 2:34-9:29. None of the footage in the compilation video showed the white trim on the cuffs and waist of Creighton's hoodie or the white lettering on the back of the hood. **See** Commonwealth's Exhibit 45 at 2:34-6:01. The defense cross-examined Detective Lucke concerning this discrepancy, and the detective explained that different factors could affect whether the trim and lettering would appear on camera. **See id**. at 114-18, 128, 140-41, 144-45. The defense also confronted Detective Lucke with other footage showing different colored markings or details on the clothes of other pedestrians and highlighted that the detective did not test whether the cameras would show the trim and lettering on Creighton's hoodie. **See id**. at 142-51.

The jury found Creighton guilty of the above-stated offenses, and the trial court sentenced him to an aggregate term of life imprisonment. Creighton filed a timely notice of appeal, and his counsel requested an extension to comply with the trial court's order for a Pa.R.A.P. 1925(b) statement. Creighton's present counsel then entered his appearance and filed a Rule 1925(b) statement asserting that the evidence was insufficient because "the clothes [Creighton] was wearing did not match the clothes of the shooter seen on the video." Rule 1925(b) Statement, 4/4/23, at 1. The trial court filed a responsive opinion.

Creighton raises the following issue for our review:

> Was the evidence insufficient as a matter of law to support [Creighton's] convictions for first-degree murder and related

- 3 -

offenses where the physical evidence was so weak and inconclusive so as to require the jury to speculate?

Creighton's Brief at 2.

Creighton's issue implicates the sufficiency of the evidence establishing that he shot Timbers. *See id*. at 2, 5; *see also* Rule 1925(b) Statement, 4/4/23, at 1. The following principles govern our review:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. ***Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered***. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Orr***, 38 A.3d 868, 872-73 (Pa. Super. 2011) (*en banc*) (internal citation omitted) (emphasis in original).

The Commonwealth must establish the identity of the defendant as the perpetrator of the offenses beyond a reasonable doubt. ***See Commonwealth v. Smyser***, 195 A.3d 912, 915 (Pa. Super. 2018).[4] "Evidence of identification

---

[4] Because Creighton has limited his issue to the sufficiency of the evidence establishing his identity as person who shot Timbers, we need not consider the other elements of the offenses of which he was convicted.

need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be considered to establish identity in conjunction with other circumstances and identification testimony." **See Commonwealth v. Williams**, 255 A.3d 565, 579 (Pa. Super. 2021) (internal citations, quotation marks, and brackets omitted). Generally, any indefiniteness or uncertainty in the identification evidence goes to the weight, not the sufficiency, of the evidence. **See Orr**, 38 A.3d at 874.

Creighton argues that the evidence was insufficient to establish that he was the person who shot Timbers. **See** Creighton's Brief at 7. He asserts that the clothing recovered by the police did not match the shooter's clothes shown in the video footage. **See id**. Creighton emphasizes that video footage did not show "markings" on hoodie worn by the shooter, in contrast to the white trim on the cuffs and the waist and white lettering on the back of the hood of his hoodie. **Id**.; **see also** Commonwealth's Exhibit 37. He asserts similar details on other people's clothes appeared on some of the security camera footage. **See** Creighton's Brief at 7. Creighton cites the propositions that a conviction cannot rest where the evidence supports equally reasonable, but mutually inconsistent, inferences of guilt or innocence and adds "the Commonwealth's clothing evidence [was] in contradiction to the physical facts, in contravention to human experience and the laws of nature." **Id**. He adds that the Commonwealth's evidence, at most, demonstrated his mere

- 5 -

presence at the scene of the shooting, and without more, his flight did not establish he shot Timbers. *See id*. at 7-8.

The trial court rejected Creighton's issue, and explained:

The shooting was partially caught on camera. Video footage recovered from the area showed a van being driven by . . . James . . .[,] turning from Dauphin Street onto 12th Street. The footage then showed an individual coming from the area of the van, walking westbound on Dauphin Street, then reapproaching the van. Shortly later, [the van pulled away and] the same individual approached the exact area where [Timbers] could be seen moments later falling to the ground after being shot. When Philadelphia Police Officer Steven Armendariz [("Officer Armendariz")]] and his partner arrived at the scene of the shooting, an individual present identified a white construction van as the [vehicle involved in the shooting]. Officer Armendariz and his partner pulled over the van after pursuing it for several blocks.

After the van pulled over, two (2) male individuals immediately exited it. [Both Officer] Armendariz and Philadelphia Police Sergeant Christian Hochstuhl, who was overhead in a police helicopter, testified that the passenger of the van was wearing a black hoodie and black shorts. Officer Armendariz identified the passenger [at trial] as [Creighton]. He stated that he saw both [Creighton] and the driver of the van, . . . James . . ., each carrying a firearm. Both [Creighton] and James . . . fled the scene upon exiting the van. Body camera footage from the ensuing foot pursuit showed [Creighton] coming from the passenger side of the van wearing a black hoodie and black shorts.

. . . [Creighton] later came running through the back door of the home [on the 2000 block of] North Franklin Street. [Creighton] ran past [the resident of the home] to the bathroom on the second floor where he took off his clothes, ran the water in the bathtub, and climbed into it. Philadelphia Police Officer Terrelle Green[e ("Officer Greene")] and his partner went to this address and found [Creighton] in the bathtub with black shorts nearby on the bathroom floor. With the help of other officers, Officer Green[e] pulled [Creighton] out of the bathtub and arrested him. A black hoodie, black basketball shorts, white

- 6 -

socks, and black sneakers were recovered from this address. . . ..[5]

* * * *

. . . [T]he evidence established that . . . Timbers, died as a result of multiple gunshot wounds. Video footage showed two individuals, later identified as Creighton and [his brother] James, arriving to the scene of the shooting in a white van. The shooter was seen on video casing the area and returning to the van, then shooting [Timbers] . . . .[6] After the white van involved in the shooting was stopped by police, Creighton and . . . James . . . fled separately. [Creighton] ran into a nearby home where he removed the clothing he was wearing at the time of the shooting and started bathing. [Creighton's] actions in both fleeing and attempting to wash himself established a consciousness of guilt.

Multiple witnesses testified that [Creighton] was wearing a black hoodie and black shorts at the time the white van was

_____

[5] Both the trial court and the Commonwealth state that Detective Lucke "matched" Creighton's clothing to the video evidence. *See* Trial Court Opinion, 6/8/23, at 8; Commonwealth's Brief at 8. However, our review of the record indicates that the compilation video prepared by Detective Lucke contained inserts of photographs of Creighton's clothing within the video footage for comparison, but the detective did not testify that the clothing shown in the inserted photographs and the video footage "matched." *See* N.T., 8/18/22, at 109, 111; *see also* Commonwealth's Exhibit 45 at 6:19 and 9:11.

[6] The trial court suggested that the compilation video showed Creighton returning to the van after the shooting. *See* Trial Court Opinion, 6/8/23, at 14. Contrary to that suggestion, there was no direct video evidence showing the van after the shooting. *See* Commonwealth's Exhibit 45 at 06:41; *see also* N.T., 8/18/22, at 109 (indicating that Detective Lucke testified that the person who shot Timbers went "off-camera"). However, the compilation video showed that after the shooting, the person who the Commonwealth asserted shot Timbers, walked away from the scene, then began running on Dauphin Street toward a vehicle, which had its rear lights on. *See* Commonwealth's Exhibit 45 at 6:41. Additionally, Officer Armendariz's testified a witness near the scene of a shooting pointed out a "white construction van," and told him it was "the shooting vehicle," after which the officer began following the van for approximately eleven blocks. N.T., 8/17/22, at 26-34. Creighton and James then fled from the van when the officer stopped it. *See id*. at 36-45.

stopped by police. A black hoodie and black shorts were recovered from the bathroom in the home that [Creighton] entered after fleeing from police. This recovered clothing matched the clothing worn by the shooter in the video footage. Accordingly, despite [Creighton's] contentions otherwise, the Commonwealth presented evidence establishing that [he] was the shooter captured in video footage present at the scene of the crime.

Trial Court Opinion, 6/8/23, at 12-15.

At the outset, we note Creighton's arguments rely principally on video footage. **See** Creighton's Brief at 7. However, Creighton has not ensured the certified record contains any of the video exhibits used at trial. **See Commonwealth v. Powell**, 956 A.2d 406, 423 (Pa. 2008) ("[a]n appellate court is limited to considering only those facts that have been duly certified in the record on appeal" (internal citation and quotation marks omitted)). Upon an informal request, this Court received some, but not all of the video exhibits.[7] **Cf**. **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) ("it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing . . . exhibits . . ." (internal citation omitted)). Under these circumstances, we conclude Creighton has waived his issue. **See Holston**, 211 A.3d at 1276 ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it

_____

[7] We also note that the certified record originally included the transcripts of only two of the seven days of trial. This Court requested and obtained all the transcripts of the trial.

contains all of the materials necessary for the reviewing court to perform its duty" (internal citation omitted)).

Even if Creighton had not waived his issue by failing to provide this Court with a complete record, we would discern no merit to Creighton's sufficiency of the evidence challenge. The jury viewed the video footage and heard the competing evidence and arguments over why the white trim and lettering on Creighton's hoodie would not have appeared in the compilation video. *See* N.T., 8/18/22, at 114-18, 128, 141, 143-51. The jury, as the finder of fact, was entitled to credit Detective Lucke's testimony that the markings on Creighton's hoodie would not appear on the video footage given factors such as the resolution of the cameras, the size of the trim and lettering, the material used in the clothing, the lighting, and the movements and angle of the person moving past the cameras. *See id*. at 114-18, 128, 140-41, 144-45; *see also Orr*, 38 A.3d at 873 ("the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence" (internal citation and brackets omitted)).

Creighton also disregards the circumstantial evidence which, when viewed in a light most favorable to the Commonwealth, linked Creighton to the shooting of Timbers. This included the video evidence that the white van had circled the area of the shooting; the person who shot Timbers, emerged from the area of where the van parked on 12th Street, appeared to scout the area, return to the van, and then reapproach Timbers from the area where the white van had been parked; after shooting Timbers, the person, began

walking, then running down Dauphin Street away from the scene. *See* N.T., 8/18/22, at 101-09; Commonwealth's Exhibit 45 at 1:00-6:41. Additionally, Officer Armendariz arrived at the scene shortly after hearing the gunshots, received a report that a white van was involved in the shooting, and almost immediately located the van and began following it on Dauphin Street. *See* N.T. 8/17/22, at 24-26, 29. Officer Armendariz also identified Creighton as the passenger who fled from the van after the stop, and Creighton was wearing a dark hoodie, shorts, and shoes, with white socks (consistent with the images of the person who shot Timbers, albeit without the white trim and lettering appearing on the videos), while James was wearing a white T-shirt. *See id*. at 37, 41-46. Officer Armendariz further testified Creighton and James were both carrying guns when they exited the van, although police were unable to recover the gun the officer saw Creighton carrying. *See id*. at 38, 42-43. Lastly, Creighton was apprehended after he broke into a stranger's home and began bathing. *See id*. at 11-13, 15, 152-54. Under these circumstances, we conclude there was a sufficient web of circumstantial evidence, in addition to the video evidence, to sustain the finding that Creighton shot and killed Timbers. *See Williams*, 255 A.3d at 579-80. Thus, any discrepancy in the depictions of the Creighton's hoodie on certain portions of the video go to the weight, not the sufficiency of the evidence sustaining his conviction. *Cf*. *Orr*, 38 A.3d at 874. Moreover, given the circumstantial evidence linking Creighton to the shooting, we conclude Creighton's argument that his conviction rested solely upon his mere presence at and flight from the

scene of the shooting also lacks merit.  *Cf*. ***Commonwealth v. Hargrave***, 745 A.2d 20, 23-24 (Pa. Super. 2000) (holding that flight alone is insufficient to prove guilt, but noting that the finder of fact may consider flight, along with other proofs, to find a defendant guilty).  Accordingly, Creighton's arguments afford him no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/19/2024